PLEICONES, J.
George Chavis (Appellant) was convicted of multiple crimes involving unlawful sexual conduct with a minor, Appellant’s step-daughter (Victim). The issues before the Court concern the qualification and testimony of two child abuse assessment experts. We affirm.
FACTS
Appellant was convicted of one count of criminal sexual conduct with a minor (CSCM) in the first degree, two counts of CSCM in the second degree, one count of lewd act upon a child, and one count of contributing to the delinquency of a minor. Appellant was sentenced to twenty-five years on the CSCM first, twenty years on each of the CSCM seconds, fifteen years for the lewd act, and three years for the contributing to the delinquency of a minor with all sentences running concurrently.
Appellant’s convictions arose out of unlawful conduct between Appellant and Victim that began when Victim was seven years old. The State presented evidence that Appellant molested Victim, forced her to perform sexual acts on him, and forced her to watch pornography.
In addition to the assaults of Victim, Victim testified that when Victim’s stepsister (Stepsister) visited, Appellant would have them both perform sexual acts on him. This testimony was corroborated by Stepsister, who stated that she and Victim were sexually assaulted by Appellant and gave further detailed accounts of her own abuse at the hands of Appellant.[1]
In 2004, Stepsister reported Appellant’s sexual abuse of both her and Victim. At this time, Victim was around ten years old and Stepsister was around fourteen. As a result of Stepsister’s disclosure, Stepsister was taken to the Durant Children’s Center (Durant Center) in Florence, where a forensic interview was performed by Mrs. Ginger Gist. Stepsister *105 testified that during the interview Stepsister disclosed that she and Victim had been sexually assaulted by Appellant. In addition to the forensic interview, a medical exam was performed by Dr. Kathy Saunders who testified without objection that Stepsister’s results were consistent with sexual activity.
Victim was also taken to the Durant Center in 2004, where a forensic interview was conducted by Mrs. Debbie Elliot. Victim testified that in 2004 she denied being sexually abused to Mrs. Elliot and claimed that Stepsister was lying. Victim was also examined by Dr. Saunders, who testified that the 2004 exam was normal.
Dr. Saunders also testified that a normal exam may be consistent with a history of sexual abuse.[2]
Victim finally told her mother about Appellant’s abuse in 2009. Victim was taken back to the Durant Center, where she was again examined by Dr. Rosa and underwent a forensic interview performed by Mrs. Robin Griggs. Dr. Rosa testified that Victim’s exam was consistent with being sexually active. The exam also revealed Victim had chlamydia. At trial, the State presented medical records that Appellant was taking medicine commonly used to treat chlamydia at this time. Finally, Victim informed Dr. Rosa that she was sexually active with her boyfriend at the time.
In addition to Victim and Stepsister, two of Appellant’s sisters testified, without objection, to their own experiences of being sexually assaulted by Appellant. They described similar experiences to Victim’s and Stepsister’s claims of being molested and sexually abused by Appellant in their youth.
In addition to testimonial evidence, photographs were introduced of Victim in only her underwear and other various stages of undress. Victim and her mother testified that Appellant took the pictures.
ISSUES
I. Did the circuit court err in qualifying Mrs. Griggs and Mrs. Elliott as experts in child abuse assessment?
*106 II. If so, was the error harmless?
DISCUSSION
I. Qualification of Mrs. Griggs and Mrs. Elliot
Appellant contends that Mrs. Griggs and Mrs. Elliot should not have been qualified as expert witnesses in the field of child abuse assessment because there was not a sufficient showing of reliability or peer review of their work product. We agree as to Mrs. Elliot. As to Mrs. Griggs, we do not reach the expert issue but find error in the admission of part of her testimony on separate grounds.
The qualification of an expert witness and the admissibility of the expert’s testimony are matters within the trial court’s sound discretion. State v. Myers, 301 S.C. 251, 391 S.E.2d 551 (1990). A trial court’s decision to admit or exclude expert testimony will not be reversed absent a prejudicial abuse of discretion. State v. Price, 368 S.C. 494, 498, 629 S.E.2d 363, 365 (2006). An abuse of discretion occurs when the conclusions of the circuit court are either controlled by an error of law or are based on unsupported factual conclusions. State v. Douglas, 369 S.C. 424, 429-30, 632 S.E.2d 845, 848 (2006).
Both parties argue, and we agree, that State v. White should apply in qualifying child abuse assessment experts because their testimony is non-scientific. 382 S.C. 265, 676 S.E.2d 684 (2009). Both Mrs. Griggs and Mrs. Elliot were identified as child abuse assessment experts, they both conducted forensic interviews, and both testified they used the RATAC[3] forensic interviewing technique, which this Court has identified as nonscientific. State v. Kromah, 401 S.C. 340, 737 S.E.2d 490 (2013) fn. 4 (“The RATAC style of interviewing is not scientific.”). Accordingly, we will analyze the qualification of Mrs. Griggs and Mrs. Elliot under White.
Under White, two threshold determinations must be made. First, the qualifications of the expert must be sufficient, and second, there must be a determination that the *107 expert’s testimony will be reliable. White, at 273, 676 S.E.2d at 688 (citing Rule 702, SCRE).
Appellant does not argue that the qualifications of Mrs. Elliot or Mrs. Griggs are insufficient. Instead, Appellant’s argument focuses on the reliability prong of the White analysis. Appellant contends that the State failed to demonstrate sufficient reliability and peer review for Mrs. Griggs and Mrs. Elliot to be qualified as experts in the field of child abuse assessment. We agree that Mrs. Elliott should not have been qualified as an expert witness but do not address Mrs. Griggs’s qualifications due to part of her testimony being inadmissible on other grounds.
A. Mrs. Elliott
Appellant contends the circuit court abused its discretion by improperly qualifying Mrs. Elliot and allowing her to testify concerning a report by Mrs. Gist,[4] the forensic interviewer who interviewed Stepsister in 2004 after Stepsister’s initial allegations of abuse by Appellant. The testimony survived a hearsay objection because the trial court ruled that as an expert, Mrs. Elliot was allowed to rely on the report under Rule 703 SCRE. Mrs. Elliot testified that in her expert opinion a disclosure of abuse had been made to Mrs. Gist.[5]
The State argues that the trial judge did not abuse his discretion in qualifying Mrs. Elliot as an expert. The State cites to Mrs. Elliot’s training, education, knowledge of RATAC protocol, and evidence of her performing over 5000 interviews. The State contends that RATAC protocol is peer reviewed and reliable, and therefore Mrs. Elliot’s testimony is reliable.[6] While we agree Mrs. Elliot has extensive experience and training, we find that there is insufficient evidence demonstrating Mrs. Elliott’s individual reliability.
*108 We agree with Appellant that although Mrs. Elliott was sufficiently trained in RATAC protocol, and that she used RATAC protocol during her interviews, there is simply no evidence that her conclusions or impressions taken from these interviews were accurate. During cross examination, when asked if there was any way to discern what her error rate was, she responded “no.” Her only peer review involved one other interviewer reviewing her work to ensure she was using RATAC protocol. When asked what her quality control procedures were, she responded “I use R[A]TAC protocol every time in the interview room.”
There is no formulaic approach for determining the foundational requirements of qualifications and reliability in non-scientific evidence. Id. at 274, 676 S.E.2d at 688. However, evidence of mere procedural consistency does not ensure reliability without some evidence demonstrating that the individual expert is able to draw reliable results from the procedures of which he or she consistently applies. We find no evidence in this record as to Mrs. Elliott’s ability to draw reliable results from the RATAC procedures she consistently follows, and thus find that the threshold reliability requirement of Rule 702 is not met. Accordingly, we hold that the circuit court abused its discretion in allowing Mrs. Elliot to testify as an expert regarding the report by Mrs. Gist.
B. Mrs. Griggs
Appellant argues that the circuit court erred in qualifying Mrs. Griggs as an expert because there was insufficient evidence of her reliability. Additionally, Appellant contends the circuit court erred when the it found Mrs. Griggs qualified as an expert because this allowed Mrs. Griggs to testify regarding her recommendation that Victim “not be around [Appellant] for any reason,” which improperly bolstered the credibility of Victim.
Assuming that there was sufficient evidence of reliability presented for Mrs. Griggs to be qualified as an expert, we find that the circuit court erred in admitting her testimony regarding her recommendation because it was improper bolstering of Victim’s credibility.
*109 While experts may give an opinion, they are not permitted to offer an opinion as to the credibility of others. State v. Kromah, supra. “Specifically, it is improper for a witness to testify as to his or her opinion about the credibility of a child victim in a sexual abuse matter.” Id. at 358-359, 737 S.E.2d at 500.
Mrs. Griggs’s recommendation that Appellant not be around Victim for any reason, can only be interpreted as Mrs. Griggs believing Victim’s claim that Appellant sexually abused her. This type of testimony is improper. See e.g., State v. Jennings, 394 S.C. 473, 480, 716 S.E.2d 91, 94 (2011) (finding error where there was “no other way to interpret the language used in the reports other than to mean the forensic interviewer believed the children were being truthful”); Kromah, at 360, 737 S.E.2d at 500 (cautioning forensic interviewers to avoid “any statement that indirectly vouches for the child’s believability”); State v. Dawkins, 297 S.C. 386, 393-94, 377 S.E.2d 298, 302 (1989) (finding admission of therapist’s testimony indicating he believed victim’s allegations were genuine was improper). This type of bolstering, especially when made by a witness imbued with imprimatur of an expert witness, improperly invades the province of the jury. State v. Wright, 269 S.C. 414, 417, 237 S.E.2d 764, 766 (1977) (“It is axiomatic that the credibility of the testimony of these witnesses is for the jury.”). Accordingly, assuming the circuit court properly qualified Mrs. Griggs as an expert, we find the court erred in allowing Mrs. Griggs to testify regarding her recommendation.
II. Harmless Error
While we find the qualification of Mrs. Elliott and the testimony of both Mrs. Elliot and Mrs. Griggs improper, in light of the substantial evidence of guilt, we hold that these errors were harmless beyond a reasonable doubt.
An appellate court generally will decline to set aside a conviction due to insubstantial errors not affecting the result. State v. Black, 400 S.C. 10, 27, 732 S.E.2d 880, 890 (2012). Whether an error is harmless depends on the circumstances of the particular case. State v. Mitchell, 286 S.C. 572, 573, 336 S.E.2d 150, 151 (1985). No definite rule of law governs this finding; rather, the materiality and prejudicial *110 character of the error must be determined from its relationship to the entire case. Id.[7]
There are two pieces of testimony which Appellant contends warrant reversal. First, Mrs. Elliott’s testimony that Stepsister disclosed abuse to Mrs. Gist in 2004, and second, Mrs. Griggs’s testimony regarding her recommendation that Appellant not be around Victim for any reason.
Mrs. Elliott’s testimony did little if any harm to Appellant. Multiple witnesses confirmed that Stepsister made a disclosure of sexual abuse in 2004, as did Stepsister in her testimony. Victim confirmed that Stepsister had made a previous disclosure. Victim’s mother testified that she knew Stepsister had made a disclosure, and finally, Dr. Saunders testified regarding her medical exam that was performed as a result of Stepsister’s disclosure. Therefore, the jury heard three independent witnesses referencing Stepsister’s disclosure of abuse in 2004, and testimony of a medical exam that was performed as a result of this disclosure. Accordingly, any error in admission of Mrs. Griggs’s testimony is harmless beyond a reasonable doubt. State v. Johnson, 298 S.C. 496, 498, 381 S.E.2d 732, 732 (1989) (admission of evidence is harmless where it is merely cumulative of other evidence).
Mrs. Griggs’s recommendation that Appellant not be around Victim improperly bolstered Victim’s credibility. However, all of Appellant’s crimes were established by evidence independent of both Mrs. Griggs and Victim. The determination whether a bolstering error is harmless depends on whether the case turns on the credibility of the victim. Compare State v. Jennings, supra (finding improper bolster *111 ing by a forensic interviewer not harmless, where there was no physical evidence and the case turned on the victims’ credibility), with Kromah, supra, (finding error harmless in light of abundant evidence and distinguishing Jennings because the case did not turn on the credibility of the victim). We find this case more akin to Kromah, as there is physical evidence and multiple witnesses who corroborated the Victim’s testimony regarding her abuse at the hands of Appellant.
As to physical evidence corroborating Victim’s claims of abuse, first, the State introduced multiple pictures that were found on the Appellant’s computer. These pictures included the Victim in various stages of undress and provocative positions.[8] Second, the State presented testimonial and circumstantial evidence establishing that the Appellant took the photos.[9] These pictures not only corroborate Victim and Stepsister’s testimony, but are evidence of lewd act upon a minor and contributing to the delinquency of a minor.
Additionally, medical evidence supported Victim’s claims of sexual abuse by Appellant. Immediately after Victim made her 2009 disclosure, her medical exam showed that she had chlamydia, and the State presented medical records showing Appellant had been taking medications commonly used to treat chlamydia at this time. This circumstantial evidence corroborated Victim’s testimony that Appellant sexually abused her.
In addition to physical evidence, substantial testimonial evidence corroborating Victim’s testimony was presented. Stepsister gave substantially detailed testimony describing not only her abuse but also describing the times when Stepsister and Victim were abused together. In addition, she testified to seeing Appellant abuse the Victim separately.
Finally, two of Appellant’s sisters testified. Each gave detailed testimony of similar instances of abuse by Appellant, which they suffered at a young age. While this did not *112 directly corroborate Victim’s testimony, it supported her claims by demonstrating Appellant’s common scheme of abusing those close to him. Rule 404, SCRE (allowing evidence of other crimes to demonstrate common scheme or plan). We find the testimony of Mrs. Griggs and Mrs. Elliot harmless beyond a reasonable doubt.
AFFIRMED.
BEATTY, J., concurs.
TOAL, C.J., concurring in part and dissenting in part in a separate opinion in which KITTREDGE, J., concurs.
HEARN, J., dissenting in a separate opinion.
Chief Justice TOAL.
While I concur in the result reached in the majority opinion, I write separately to state my disagreement with the reasoning contained in both the majority and dissenting opinions.

1. Expert Qualification

First, the majority finds error in the trial court’s admission of Elliott’s expert testimony on the basis that it was unreliable. See State v. White, 382 S.C. 265, 273, 676 S.E.2d 684, 688 (2009) (stating that for non-scientific expert testimony to be admissible, the qualifications of the expert must be sufficient, and that there must be a determination that the expert’s testimony will be reliable) (citing Rule 702, SCRE). I disagree with the majority’s reasoning that Elliott should not have been qualified as an expert because she did not demonstrate the reliability of the RATAC method of forensic interviewing.
Despite the pall this Court has cast on the RATAC method in past decisions — especially in Kromah[10] — RATAC it is still a recognized method of forensic interviewing in this state, and in my opinion, for good reason, due to the sensitive nature of the interviewing process involving a child victim of sexual abuse. *113 However, I read the majority’s opinion to imply that the RATAC method itself is no longer reliable.[11]
If the majority’s goal is not to discredit the RATAC method entirely, then I fail to see how Elliott’s testimony was unreliable. She testified that she had performed over 5,000 forensic interviews using the method, and she also testified to her specific training, education, and knowledge of RATAC. Cf. White, 382 S.C. at 274, 676 S.E.2d at 688 (stating there is no “one-size-fits-all” approach for determining the foundational requirements of qualification and reliability in non-scientific evidence).
Regardless, I ultimately agree with the majority that any error was harmless beyond a reasonable doubt for the reasons stated by the majority.[12]

2. Improper Bolstering

Next, with respect to the actual testimony of both Elliott and Griggs, it is my opinion that both the majority and the dissent wrongly conclude that the testimony improperly bolstered the victim’s credibility.
Without a doubt, our precedents stand for the proposition that an expert in child abuse assessment may not bolster the child victim’s veracity or credibility, the idea being that, even if instructed not to, the jury might place more credence in the *114 expert’s opinion, thereby invading the jury’s fact-finding role. While I respect the import of our previous holdings, as I alluded to previously, I am concerned that the Court has gone too far in discrediting forensic interviewers in these child sex abuse cases, and now finds error whenever a forensic interviewer testifies. In my opinion, forensic interviewing generally, and the RATAC method specifically, have an important role to play in these cases, not just because of the sensitive subject matter and relative immaturity of the victims, but because children often communicate differently than adults. To me, this testimony has evidentiary value.
With respect to Elliott, the dissent finds that the trial court erred in permitting Elliott to testify that Stepsister made a disclosure of abuse to Gist in 2004.[13] With respect to Mrs. Griggs, both the majority and the dissent find that her testimony impermissibly bolstered the victim’s credibility because she testified that she recommended that Victim “not be around [Appellant] for any reason.”
In my opinion, neither of these experts impermissibly bolstered Victim’s credibility or impermissibly vouched for her veracity. See Kromah, 401 S.C. at 359, 737 S.E.2d at 500 (where the expert testified to a “compelling” finding of child abuse), State v. Jennings, 394 S.C. 473, 480, 716 S.E.2d 91, 94 (2011) (same). Elliott’s testimony simply relayed what Stepsister disclosed to her; and Griggs’s testimony merely restated her recommendation that Appellant stay away from Victim. The important distinction between this case and cases such as Kromah and Jennings is that the experts did not state whether or not they believed Victim. Therefore, I cannot see how this expert testimony improperly bolstered Victim’s testimony either directly or indirectly.
Accordingly, for the foregoing reasons, I agree that the trial court should be affirmed.
KITTREDGE, J., concurs.

. There is no challenge on appeal to Stepsister’s testimony.

. This finding was consistent with Victim's testimony that she had not had vaginal intercourse with Appellant by this time.

. RATAC stands for Rapport; Anatomy; Touch; Abuse Scenario; and Closure.

. Mrs. Gist was unavailable for trial.

. The exact colloquy regarding this disclosure went as follows:
Q: Okay. And after reviewing that interview, and without going into anything that was said to Mrs. Gist, in your expert opinion, was a disclosure made?
A: It was.

. This Court has recently acknowledged that RATAC is not without its critics. See Kromah, 401 S.C. at 357, 737 S.E.2d at 499 fn. 5 (2013).

. We disagree with the dissent that the “contributing to the verdict” standard and the "overwhelming evidence” standard are used interchangeably, and that one is less stringent than the other. In this case, where there is error in admitting certain testimony, we find that the error can be deemed harmless because there is other overwhelming evidence of guilt. However, we readily acknowledge that there are some errors, particularly errors of law, which cannot be rendered harmless by overwhelming evidence. See, e.g., State v. Middleton, 407 S.C. 312, 755 S.E.2d 432 (2014) (Pleicones J, dissenting) (noting that a failure to charge a lesser included cannot be rendered harmless by overwhelming evidence). While we appreciate the discussion by the dissent, as the dissent acknowledges, this issue was not raised by either party.

. Pictures of the Appellant completely nude were also found on the computer, which is consistent with Victim and Stepsister’s testimony that Appellant showed them pictures of himself naked.

. The dissent misunderstands our holding. It is not whether the photos prove the crimes, but rather whether they are independent circumstantial evidence corroborating Victim’s testimony.

. State v. Kromah, 401 S.C. 340, 737 S.E.2d 490 (2013).

. In fact, trial courts across the country routinely qualify experts who use the RATAC method. Not only did this Court acknowledge this fact in Kromah, but we also stated that RATAC was a useful tool in interviewing child victims of sexual abuse. See Kromah, 401 S.C. at 357 n. 5, 737 S.E.2d at 499 n. 5.

. At this point, I feel compelled to comment on the dissent's criticism of this Court’s so-called "inconsistent” application of the doctrine of harmless error. I see no error in the characterization of the standard across our case law as applied to the facts of each case. Whether characterized as an “overwhelming evidence” standard or a "contribute to the verdict” standard, the ultimate consequence of the analyses under each standard is the same in that courts are trying to parse whether or not a criminal defendant received a trial that comports with notions of fundamental fairness. Criminal defendants are entitled to a fair trial, but not a perfect trial. Thus, where an error does not impact the fairness of the trial, it is harmless. Both inquiries guide this Court in assessing the question of fairness, and therefore, they are not inconsistent as the dissent suggests.

. I note that the majority does not reach the question of the admissibility of Elliott’s testimony because it finds that her testimony was unreliable. While the dissent agrees with majority that Elliott should not have been qualified as an expert, the dissent would also find that Elliott improperly bolstered Victim's testimony.