# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Isaac Antonio Anderson, Appellant.

Appellate Case No. 2012-212905

Appeal from Richland County
DeAndrea G. Benjamin, Circuit Court Judge

Opinion No. 27558
Heard April 9, 2015 – Filed August 5, 2015

## REVERSED

Joshua Shaheen Nasrollahi, of Greenwood, and Chief
Appellate Defender Robert Michael Dudek, of Columbia,
for Appellant.

Attorney General Alan McCrory Wilson, Assistant
Attorney General William M. Blitch, Jr., and Solicitor
Daniel Edward Johnson, all of Columbia, for
Respondent.

**JUSTICE PLEICONES:** Appellant was convicted of first degree criminal sexual
conduct with a minor, his girlfriend's daughter, and received a life sentence without
the possibility of parole (LWOP).[1] On appeal, he challenges the constitutionality

---

[1] Appellant had a 1993 conviction that made him eligible for an LWOP.

of S.C. Code Ann. § 17-23-175 (2014) on Confrontation Clause[2] grounds, and contends the trial court erred in qualifying Witness Smith as an expert in both forensic interviewing and child abuse assessment.  Further, he alleges Witness Smith's testimony impermissibly bolstered that of the minor.  We find the statute constitutional, but agree with Appellant that the trial court erred in qualifying Witness Smith as an expert, and in allowing bolstering testimony.  We reverse Appellant's conviction and sentence.

The minor lived with Appellant and her mother for approximately six years from the time she was five years old until she was eleven.  Appellant and the child had a close relationship, even as her mother's and Appellant's relationship ended.  In November 2009, when she was eleven years old, the victim told her mother that Appellant had been sexually abusing her, including intercourse, since she was seven years old.  There was no physical evidence of abuse, and Appellant denied the accusations.

## ISSUES

(1)  Does S.C. Code Ann. § 17-23-175 (2014) violate the Confrontation Clause because it does not permit contemporaneous cross-examination of the individual being videotaped?

(2)  Did the circuit court err in qualifying Witness Smith as an expert and permitting her to improperly bolster the minor's credibility?

## ANALYSIS

### A.  Constitutionality of § 17-23-175

Appellant contends that § 17-23-175, which permits the admission of a child's videotaped forensic interview under certain circumstances,[3] violates the Sixth Amendment's Confrontation Clause.  We disagree.

---

[2] *See* U.S. Const. am. VI.

[3] Subsections (A) through (D) of the statute are reproduced here:

**SECTION 17-23-175. Admissibility of out-of-court statement of child under twelve; determination of trustworthiness; notice to adverse party.**

(A) In a general sessions court proceeding or a delinquency proceeding in family court, an out-of-court statement of a child is admissible if:

(1) the statement was given in response to questioning conducted during an investigative interview of the child;

(2) an audio and visual recording of the statement is preserved on film, videotape, or other electronic means, except as provided in subsection (F);

(3) the child testifies at the proceeding and is subject to cross-examination on the elements of the offense and the making of the out-of-court statement; and

(4) the court finds, in a hearing conducted outside the presence of the jury, that the totality of the circumstances surrounding the making of the statement provides particularized guarantees of trustworthiness.

(B) In determining whether a statement possesses particularized guarantees of trustworthiness, the court may consider, but is not limited to, the following factors:

(1) whether the statement was elicited by leading questions;

(2) whether the interviewer has been trained in conducting investigative interviews of children;

(3) whether the statement represents a detailed account of the alleged offense;

(4) whether the statement has internal coherence; and

Appellant contends that the statute violates the Confrontation Clause because it does not afford the accused the opportunity to cross-examine the witness during the videotaping. Further, he argues that where, as here, the child testifies before the videotape is introduced, the defendant has no opportunity to cross-examine the child on the statements made in the videotape since it is not yet in evidence. Appellant asserts that were the defendant to cross-examine the child about the videotape prior to its introduction into evidence, he would waive any objection to the videotape itself. Finally, Appellant argues that because the minor was not recalled by the State after the playing of the videotape, he was denied his constitutional right to contemporaneous cross-examination, a right he contends was established by *Maryland v. Craig*, 497 U.S. 836 (1990).

In *Craig*, the child testified at the trial from a remote location on a one-way closed circuit television: Persons in the courtroom could observe the child, but she could not see the people, including the defendant. The issue in *Craig* was whether this one-way procedure violated the component of the Confrontation Clause that prefers a face-to-face encounter between the witness and the defendant during the

---

(5) sworn testimony of any participant which may be determined as necessary by the court.

(C) For purposes of this section, a child is:

(1) a person who is under the age of twelve years at the time of the making of the statement or who functions cognitively, adaptively, or developmentally under the age of twelve at the time of making the statement; and

(2) a person who is the alleged victim of, or witness to, a criminal act for which the defendant, upon conviction, would be required to register pursuant to the provisions of Article 7, Chapter 3, Title 23.

(D) For purposes of this section an investigative interview is the questioning of a child by a law enforcement officer, a Department of Social Services case worker, or other professional interviewing the child on behalf of one of these agencies, or in response to a suspected case of child abuse.

testimony.  Appellant relies on the following language from *Craig* upholding the one-way camera arrangement:

> [The] procedure preserves all of the other elements of the confrontation right: The child witness must be competent to testify and must testify under oath; the defendant **retains full opportunity for contemporaneous cross-examination**; and the judge, jury, and defendant are able to view (albeit by video monitor) the demeanor (and body) of the witness as he or she testifies.  Although we are mindful of the many subtle effects face-to-face confrontation may have on an adversary criminal proceeding, the presence of these other elements of confrontation -- oath, cross-examination, and observation of the witness' demeanor -- adequately ensures that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony.

> *Craig*, 490 U.S. at 851 (emphasis supplied).

Appellant's reliance on *Craig* as requiring contemporaneous cross-examination during the statutory videotaping process or at trial immediately following the playing of the videotape, is misplaced.  Here, the minor testified under oath in open court and was subject to cross-examination.  Thus, Appellant's right to the opportunity for effective cross-examination was satisfied during the minor's actual trial testimony.  That is all the Confrontation Clause requires.  *Crawford v. Washington*, 541 U.S. 36 (2004).  That Appellant would have to recall the child as an adverse witness in order to examine her about her videotaped statement does not render the statute or the procedure followed here violative of a defendant's Sixth Amendment right to cross-examination.  *See State v. Hill*, 394 S.C. 280, 715 S.E.2d 368 (Ct. App. 2011).

## B.  Expertise and Bolstering

Appellant first contends the trial court erred in qualifying Witness Smith as an expert in "child abuse assessment."  We agree.  Prior to the commencement of trial, an *in camera* hearing was conducted following which the trial court found Smith to be an expert in forensic interviewing.  When the State called Smith at trial, and after reviewing her expert qualifications, the State offered her as "an expert in

forensic interviewing and child abuse assessment."  Appellant immediately objected, but the judge overruled the objection, stating the qualification was "as a forensic interviewer in child abuse assessment."  Appellant respectfully renewed his objection, rightfully pointing out that there had been no previous determination that Smith possessed expertise in "child abuse assessment."  The trial judge declined to hold a hearing on the existence of this expertise, much less whether Smith possessed the necessary qualifications.

The trial judge's refusal to determine Smith's qualification as a "child abuse assessment" expert was patent error.  Certainly we recognize that there is such an expertise: this is the type of expert who can, for example, testify to the behavioral characteristics of sex abuse victims.  *See*, *e.g.*, *State v. Schumpert*, 312 S.C. 502, 435 S.E.2d 859 (1993); *State v. Weaverling*, 337 S.C. 460, 523 S.E.2d 787 (Ct. App. 1999); *see also State v. White*, 361 S.C. 407, 605 S.E.2d 540 (2004) (such witness may be more crucial where alleged victim is a child).  The better practice, however, is not to have the individual who examined the alleged victim testify, but rather to call an independent expert.  To allow the person who examined the child to testify to the characteristics of victims runs the risk that the expert will vouch for the alleged victim's credibility.[4]  *Compare State v. Brown*, 411 S.C. 332, 768 S.E.2d 246 (Ct. App. 2015) (distinguishing improper bolstering cases because in *Brown* the behavioral expert did not examine the victim).  Here, Witness Smith vouched for the minor when she testified only to those characteristics which she observed in the minor.

Appellant also contends the circuit court erred in qualifying Witness Smith as an expert in forensic interviewing, arguing that South Carolina courts do not recognize this type of expertise, and that a forensic interviewer is restricted to testifying to facts.  We agree.  *See State v. Douglas*, 380 S.C. 499, 671 S.E.2d 606 (2009); *State v. Kromah*, 401 S.C. 340, 737 S.E.2d 490 (2013) fn. 5; *see also State v. Baker*, 411 S.C. 583, 769 S.E.2d 860 (2015) (Toal, C.J., dissenting) (finding error in qualifying forensic interviewer as an expert harmless).  Having found error in qualifying Witness Smith as an expert in child abuse assessment and in forensic

---

[4] The separate writing erroneously equates the testimony of an expert who offers his opinion on a fact in issue, such as whether a product was defectively designed or manufactured, with that of an expert whose testimony may intrude upon the jury's sole province to determine the credibility of a witness.  *E.g., State v. Taylor,* 255 S.C. 268, 178 S.E.2d 244 (1970).

interviewing, the critical question becomes whether these two errors so prejudiced Appellant that we must reverse his conviction. We find that they did.

This case turned solely on the credibility of the minor and of Appellant. The minor testified to abuse by Appellant over a course of three to four years, while Appellant denied any improper conduct. There was no physical evidence of sexual abuse. We note that the solicitor and Witness Smith (a very experienced witness) repeatedly pushed the boundaries of the parties' common understanding of the permissible limits of Smith's trial testimony. For example, when testifying about the interview guidelines, Smith testified "[w]e will have a conversation with the children about the importance of truth-telling and how important it is that we . . . if we make a mistake we want . . . ." Appellant objected, and after a bench conference, his objection was overruled. There were two other objections and bench conferences before the jury was excused. At this juncture, Appellant moved for a mistrial based, in part, on the volume of the solicitor's voice at the bench hearings. The judge denied the mistrial, but not before remarking "I did have to tell [the solicitor] a couple of times to hold her voice down."

The State introduced the video through Witness Smith, then asked her what was meant by the terms delayed reporting or delayed disclosure. Appellant immediately objected, a bench conference was held, and Smith was permitted to begin explaining the terms' meaning. Appellant again objected, and the trial judge agreed to dismiss the jury in order to have the objection placed on the record. The judge overruled this objection, yet found herself sustaining Appellant's objections as the solicitor continued to elicit improper vouching testimony, and Smith continued to offer it. The prejudice on this record is overwhelming.

The record in this case and in the child sex abuse cases that have come before us in recent years demonstrate that the common practice is to present the forensic interviewer to jurors as a "human lie-detector." *See State v. Kromah*, *supra*, at fn. 4. In order to alleviate the prejudice inuring from this type of improper testimony and to clarify the procedure to be used at trial, we take this opportunity to set forth the appropriate scope of the testimony of a forensic interviewer who has conducted a videotaped interview pursuant to § 17-23-175.[5]

---

[5] Much of what we say today would apply to an "electronically recorded statement" under § 17-23-175(F).

First, the statute requires that the interviewer be called to testify *in camera*. *See* § 17-23-175(A)(4). At that *in camera* hearing, the interviewer must testify to establish the types of factors set forth in § 17-23-175(B), such as her training and background, whether she utilized the RATAC procedure or the ChildFirst protocol, as well as any other testimony that will assist the trial court in determining whether the child's statement possesses the "particularized guarantees of trustworthiness" and thus the admissibility of the video. § 17-23-175(B). Assuming the court determines that the interview is admissible under the statute, the forensic interviewer will be called to testify before the jury. The sole purpose of her jury testimony is to lay the foundation for the introduction of the videotape, and the questioning must be limited to that subject. There is to be no testimony to such things as techniques, of the instruction to the interview subject of the importance of telling the truth, or that the purpose of the interview is to allow law enforcement to determine whether a criminal investigation is warranted. This type of testimony, which establishes the "particularized guarantees of trustworthiness," necessarily conveys to the jury that the interviewer and law enforcement believe the victim and that their beliefs led to the defendant's arrest, these charges, and this trial, thus impermissibly bolstering the minor's credibility. We hold none of the evidence necessary for the trial court's determination of "whether a statement possesses particularized guarantees of trustworthiness" and thus admissible under § 17-23-175(A)(4) and (B) is to be presented to the jury, as such evidence necessarily vouches for the credibility of the alleged victim.[6]

We recognize the difficulty of the work performed by the dedicated employees of Child Advocacy Centers,[7] and nothing in our opinion today should be read as critical of the important service they provide for the children of the State. We simply hold that the testimony of the factors that are relevant to the trial court's determination whether the interviewee's statement is trustworthy is not appropriate for the jury, which is charged with determining for itself the credibility of each witness.

---

[6] Of course, like any other fact witness, the forensic interviewer may testify to her observations. This fact-based testimony can include, despite the concerns expressed in the separate writing, the "particulars of their examinations, and their personal observations." Since the interviewer is not an expert, however, she cannot testify to "issues of delayed reporting." *See In re Thomas S.*, 402 S.C. 373, 741 S.E.2d 27 (2013). This improper expression of expert opinion by a lay witness is prohibited by Rules 602 and 701, SCRE.

[7] S.C. Code Ann. § 63-11-310 (2010).

## CONCLUSION

For the reasons given above, Appellant's conviction and sentence are

**REVERSED**.

**BEATTY and HEARN, JJ., concur.  TOAL, C.J., concurring in a separate opinion in which KITTREDGE, J., concurs.**

**CHIEF JUSTICE TOAL:** I concur in Part A of the majority's opinion, as I agree that section 17-23-175 is constitutional. Further, I agree with the majority that the expert in child abuse assessment may have committed reversible error in this case by attesting to the veracity of the minor child. However, I disagree strongly with the majority's suggestion in Part B that there is no place for expert testimony by child abuse experts who actually examined the victim in child sex abuse trials.

While the State is not permitted to use experts in RATAC or other methods of forensic interviewing to bolster the minor child's testimony, it is my opinion that forensic interviewers have a legitimate role to play in these cases, and may be qualified as experts in child abuse assessment.[8] In this setting, forensic interviewers may testify about the particulars of their examinations and their personal observations, and may also testify as experts regarding matters in their expertise, such as delayed disclosure of the abuse. Nothing in our Rules of Evidence or jurisprudence prohibits this type of testimony by qualified experts. As I have noted in previous cases, the majority has again taken our line of cases limiting this kind of expert testimony too far. *See State v. Chavis*, 412 S.C. 101, 112–14, 771 S.E.2d 336, 342–43 (2015) (Toal, C.J., concurring in part, dissenting in part). Thus, I especially disagree with the majority's suggestion that the better practice in these cases is to hire an independent expert who has never interviewed the child.[9] Again, the only testimony our cases prevent is testimony that bolsters the minor child's testimony. The only error here is that Smith's testimony did just that. However, the trial court did not err in qualifying Smith as an expert in child

---

[8] It is well-established across the country that an expert in child abuse assessment may testify regarding behavioral characteristics, such as delayed disclosure of the abuse. I fear that the majority is creating dangerous precedent, whereby a forensic interviewer may not be qualified as an expert in child abuse assessment, for the mere fact that the witness is either a practicing forensic interviewer or the person who examined the victim.

[9] In other contexts, we have refused to approve of the qualification of an expert who lacked sufficient knowledge about the facts of the particular matter in which the expert was requested to render an opinion. *See, e.g.*, *Watson v. Ford Motor Co.*, 389 S.C. 434, 699 S.E.2d 169 (2010) (finding certain experts should not have been qualified where they lacked sufficient knowledge about the area in which they were called to testify). In this case, we are condemning the proposed expert because she has *too much* knowledge about the case.

abuse assessment, and I am gravely concerned with the majority's curtailment of this type of expertise.

Although I agree that Appellant's conviction should be reversed, I disagree strongly with these points in the majority's reasoning.

**KITTREDGE, J., concurs.**