# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Shannon Earl Garland, Appellant.

Appellate Case No. 2018-002085

———————

Appeal From Greenville County
Robin B. Stilwell, Circuit Court Judge

———————

Opinion No. 5920
Heard February 8, 2022 – Filed July 6, 2022

———————

## AFFIRMED

———————

Appellate Defender Susan Barber Hackett, of Columbia,
for Appellant.

Attorney General Alan McCrory Wilson and Senior
Assistant Attorney General David A. Spencer, both of
Columbia, and Solicitor William Walter Wilkins, III, of
Greenville, all for Respondent.

———————

**MCDONALD, J.:** Shannon Garland appeals his convictions for exposure of
private parts in a lewd and lascivious manner, criminal sexual conduct (CSC) with
a minor in the first degree, and CSC with a minor in the third degree, arguing the
circuit court erred in allowing the minor's (Minor) therapist to testify as an expert
in child sex abuse dynamics. We affirm.

**Facts and Procedural History**

Minor's mother (Mother) began dating Garland when Minor was in the second grade. A year and a half later, Mother, Minor, and Garland moved into a mobile home on Minor's maternal grandmother's (Grandmother) property. After Mother and Garland failed to pay rent or utilities for a year, Grandmother asked them to leave. At trial, Minor testified Garland began sexually abusing her when the family lived in the trailer on Grandmother's property.

Mother, Garland, and Minor then moved into a home on a friend's property, but the friend asked them to leave after they failed to pay rent. The friend's neighbor allowed them to move in with her, and the three remained with the neighbor for five or six months. The neighbor asked them to leave after Garland and Mother got into a fight and left Minor at the neighbor's house. Once the family moved out, the neighbor called the South Carolina Department of Social Services (DSS) because she had concerns that at nine years old, Minor "knew a whole lot of things that she shouldn't have known. Drugs, pills, sex."

Eventually, Mother moved into a motel with Garland, and Minor moved in with Grandmother. On Mother's Day in 2016, Grandmother took Minor to visit Mother at the motel. While Minor was visiting, Mother left her alone at the motel with Garland, who began watching pornography on his phone while in the room with Minor. Garland asked Minor to sit on his lap, but Minor told him no. Garland then came towards Minor and tried to pull her pants off, but Minor pushed him away with her feet.

When Grandmother picked up Minor from the motel, Minor was quiet, which was unusual following her visits with Mother. The following week, Minor's school guidance counselor informed Grandmother that she had alerted DSS because Minor disclosed sexual abuse. Later that day, Minor told Grandmother about Garland's behavior at the motel. Grandmother reported Minor's disclosure to Mother, but Mother did not believe the disclosure to be true.

DSS referred the case to an investigator, who sent Minor to the Julie Valentine Center for a forensic interview. In the interview, Minor disclosed that Garland had sexually abused her at the motel on Mother's Day.

In January 2017, Minor disclosed additional allegations of abuse to Grandmother. These disclosures involved Garland's abuse at the trailer on Grandmother's property and at the home on the friend's property. Grandmother informed Minor's

therapist, Erica Van Wagner, who notified law enforcement of the additional allegations, and Minor participated in another forensic interview.

Garland testified at his trial and denied all allegations. Ultimately, the jury found Garland guilty of first-degree CSC with a minor, third-degree CSC with a minor, and exposure of private parts in a lewd and lascivious manner. The circuit court sentenced Garland concurrently to twenty-eight years' imprisonment for first-degree CSC with a minor, fifteen years for third-degree CSC with a minor, and six months for exposure of private parts in a lewd and lascivious manner.

## Standard of Review

"The admission or exclusion of evidence is a matter addressed to the sound discretion of the trial court and its ruling will not be disturbed in the absence of a manifest abuse of discretion accompanied by probable prejudice." *State v. Kromah*, 401 S.C. 340, 349, 737 S.E.2d 490, 494–95 (2013) (quoting *State v. Douglas*, 369 S.C. 424, 429, 632 S.E.2d 845, 847–48 (2006)). "The trial court's decision to admit expert testimony will not be reversed on appeal absent an abuse of discretion." *State v. Makins*, 433 S.C. 494, 500, 860 S.E.2d 666, 670 (2021) (quoting *State v. Price*, 368 S.C. 494, 498, 629 S.E.2d 363, 365 (2006)). "An abuse of discretion occurs when the conclusions of the circuit court are either controlled by an error of law or are based on unsupported factual conclusions." *State v. Chavis*, 412 S.C. 101, 106, 771 S.E.2d 336, 338 (2015).

## Law and Analysis

Garland argues the circuit court erred in allowing Van Wagner, who was Minor's therapist, to testify as an expert on child sex abuse dynamics and the treatment of children for trauma and sex abuse. Garland further asserts the State failed to demonstrate Van Wagner's testimony was reliable, and that her testimony served to improperly vouch for Minor's credibility. We disagree.

"All expert testimony must satisfy the Rule 702 criteria, and that includes the trial court's gatekeeping function in ensuring the proposed expert testimony meets a reliability threshold for the jury's ultimate consideration." *State v. White*, 382 S.C. 265, 270, 676 S.E.2d 684, 686 (2009). Rule 702 provides, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Rule 702, SCRE. "Under *White*, two threshold

determinations must be made. First, the qualifications of the expert must be sufficient, and second, there must be a determination that the expert's testimony will be reliable." *Chavis,* 412 S.C. at 106–07, 771 S.E.2d at 339. There is no formulaic approach applicable to the evaluation of nonscientific expert evidence, as the "foundational reliability requirement for expert testimony does not lend itself to a one-size-fits-all approach." *White*, 382 S.C. at 274, 676 S.E.2d at 688.

Garland objected to qualifying Van Wagner as an expert and requested a proffer of her proposed testimony so the circuit court could consider both Van Wagner's qualifications and the reliability of her testimony. The State proffered Van Wagner's testimony that she was a mental health therapist with Greenville Mental Health Center, where she supervised the center's DSS program. Van Wagner has a Bachelor's Degree and Master's Degree in social work, is a licensed independent social worker with a clinical practice focus, has been employed by the Department of Mental Health for eighteen years, and has treated over 4,000 patients during the course of her career. Van Wagner participates in weekly meetings with psychiatrists and other clinicians to collaborate on complicated cases. She uses trauma focused cognitive behavioral therapy in treating children who have been sexually abused.

The State moved to qualify Van Wagner as an expert "in the treatment of children with trauma, including but not limited to sex abuse and then child sex abuse dynamics," explaining Van Wagner would briefly testify that she treated Minor but would not testify about Minor's symptoms or diagnosis. The State continued, "She is merely going to say that she talked to Minor [and] that she counseled her. She was seeing her for sexual abuse disclosures, she had a treatment plan for her, and then, the time and place of her disclosure." The circuit court responded:

> Okay. Is it relevant to your case to introduce all of those additional—that additional information regarding the treatment plan and all of those materials? What I want to do is distance her as much as possible from this actual case if she's going to talk about the phenomenon in general. Because what we're trying to do, and you know, we're trying to avoid as much as possible any situation where there is appearance of vouching.

The State admitted discussion of the treatment plan was not necessary but asserted Van Wagner was important to establish the time and place of Minor's disclosure to the therapist.

Garland opposed the State's motion, arguing the State's attempt to present Minor's treating therapist as both its abuse disclosure and abuse dynamics witness would violate *Kromah*[1] because testimony by such a dual witness would implicitly vouch for Minor's credibility.  Garland asserted Van Wagner could not be a proper blind expert because she had a "sincere interest" in Minor's well-being as her therapist.  Garland further argued Van Wagner's reliability was suspect because she elicited information during her counseling sessions that would be used at trial.

The circuit court expressed its preference that the State present Van Wagner as either a blind expert or a fact witness—not as a dual witness.  The State responded it would rather present Van Wagner as a blind expert but noted other witnesses had already testified that Van Wagner treated Minor.  The circuit court explained it was limiting Van Wagner's testimony to address Garland's concern regarding the risk of implicit vouching.

Prior to Van Wagner's testimony before the jury, Garland renewed his objection, which the circuit court overruled.  Van Wagner testified about grooming, types of disclosure, delayed disclosure, trauma, symptoms of trauma, and coping mechanisms for people who have experienced trauma.  She did not testify about Minor specifically or address her treatment.

"Expert testimony on rape trauma may be more crucial in situations where children are victims.  The inexperience and impressionability of children often render them unable to effectively articulate the events giving rise to criminal sexual behavior." *State v. White*, 361 S.C. 407, 414–15, 605 S.E.2d 540, 544 (2004).  While our supreme court has recognized an expertise in child abuse assessment, it has cautioned that "allow[ing] the person who examined the child to testify to the characteristics of victims runs the risk that the expert will vouch for the alleged victim's credibility."  *State v. Anderson*, 413 S.C. 212, 218–19, 776 S.E.2d 76, 79 (2015).  The better practice "is not to have the individual who examined the alleged victim testify, but rather to call an independent expert." *Id.* at 218, 776 S.E.2d at 79.  *But see Makins*, 433 S.C. at 505, 860 S.E.2d at 672 (reiterating the bolstering risks presented by dual experts but finding no reversible error in admitting expert testimony addressing both the characteristics of abused children and the child victim's treatment).

---

[1] 401 S.C. at 358-360, 737 S.E.2d at 499–500 (reiterating that it is improper for an expert to testify as to the credibility of a child witness in a sexual abuse case and describing the kinds of statements a witness should avoid at trial).

In *Makins*, the supreme court found the testimony of Kristin Rich, the minor victim's therapist, did not improperly bolster the victim's testimony. *Id.* The court noted:

> Rich never testified she advised Minor about the importance of being truthful, never testified directly as to Minor's truthfulness, and never opined Minor's behavior indicated truthfulness. While Rich was allowed to confirm she treated Minor, she was not allowed to explain why she was treating Minor, detail her treatment of Minor, or testify as to her diagnosis of Minor. Rich only addressed the circumstances of Minor's disclosure of abuse and the drawing Minor produced in therapy.

*Id*. at 503, 860 S.E.2d at 671.

Pursuant to the supreme court's analysis in *Makins*, we find the circuit court did not abuse its discretion in allowing Van Wagner to testify as an expert in child trauma and sexual abuse dynamics. Garland argues the State failed to satisfy *White*'s reliability requirement because Van Wagner was Minor's treating therapist. However, for this court to deem Van Wagner's testimony unreliable on the sole basis that Van Wagner treated Minor would implicate the bright line rule rejected in *Makins*—prohibiting a treating therapist from ever testifying as an abuse dynamics expert in child sex abuse cases. Here, the circuit court limited the State to presenting Van Wagner as a general abuse dynamics and trauma expert and did not permit her to discuss "her personal counseling and provision of services to this specific victim in this case." Thus, the admission of Van Wagner's testimony presented a lesser danger of implicit vouching than that of therapist Rich in *Makins*.

This case is distinguishable from *Chavis*, in which the supreme court addressed the reliability of testimony by a forensic interviewer offered as an expert in the field of child abuse assessments. There, the interviewer also testified as to a disclosure of defendant's abuse by the victim's stepsister. 412 S.C. at 106–07, 771 S.E.2d at 338–39. Van Wagner was not qualified as an expert in forensic interviewing; rather, she testified as an expert in sex abuse dynamics generally and explained concepts related to child sexual abuse and trauma. She did not address Minor's disclosures. The reliability concerns in *Chavis* were based on the interviewer's

problematic application of the RATAC[2] protocol in the interview with the victim's stepsister, whereas here, Garland argued Van Wagner was not reliable as the abuse dynamics expert solely because she was Minor's treating therapist.

Moreover, we find Van Wagner did not impermissibly vouch for Minor's credibility in her testimony. In addressing Garland's objections, the circuit court carefully analyzed the potential vouching issues and minimized the risk of vouching by prohibiting Van Wagner from testifying she treated Minor; the State presented evidence of the times and places of the abuse through other fact witnesses. The only evidence presented at trial connecting Van Wagner to Minor were comments from other witnesses noting Van Wagner was Minor's therapist, and Garland did not object in these instances. Without more, Garland's argument that these references by other witnesses transformed Van Wagner's general dynamics testimony into vouching or improper bolstering does not convince us that the circuit court erred in admitting Van Wagner's testimony. *See Makins*, 433 S.C. at 503, 860 S.E.2d E.2d at 671 ("To suggest Rich's simple affirmation that she provided therapy to Minor can singularly constitute improper bolstering is a bridge too far. In this specific context, Rich's 'yes' alone, without more, did not convey to the jury that Rich believed Minor.").

**AFFIRMED.**

**THOMAS and HEWITT, JJ., concur.**

---

[2] RATAC is an acronym for Rapport, Anatomy, Touch, Abuse Scenario, and Closure.