# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Brandon Jerome Clark, Appellant.

Appellate Case No. 2019-001477

_____

Appeal From Pickens County
Donald B. Hocker, Circuit Court Judge

_____

Opinion No. 5968
Heard October 5, 2022 – Filed February 8, 2023

_____

**AFFIRMED**

_____

Cameron Jane Blazer, of Blazer Law Firm, of Mount
Pleasant, for Appellant.

Attorney General Alan McCrory Wilson and Assistant
Attorney General Ambree Michele Muller, both of
Columbia; and Solicitor William Walter Wilkins, III, of
Greenville, all for Respondent.

_____

**HEWITT, J.:** Brandon Jerome Clark appeals his conviction and sentence for first-degree criminal sexual conduct (CSC) with a minor. He makes five arguments: the circuit court erred in (1) limiting his cross-examination of the person who conducted a recorded interview with the alleged victim, (2) admitting the recording of that interview into evidence, (3) excluding his expert on these sorts of recorded interviews, (4) denying a directed verdict, and (5) not finding a violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

Much of this opinion concerns the arguments about the recorded interview with Clark's alleged victim (Child). These interviews—sometimes called "forensic interviews"—have been the subject of many opinions over the last several years. A recurring principle in these precedents is preventing improper bolstering of the alleged victim's testimony. To that end, the cases describe various and limited testimony that certain witnesses may present to the jury.

The issues about the interview in this case touch on the same principle but were presented differently here than they have been presented before. During the hearing that is necessary before this sort of interview can be admitted, Clark made clear that he did not object to the interview being admitted into evidence. But later, after the circuit court made the required finding that the interview was reliable and after the interview was played for the jury, Clark argued the interview did not satisfy the standard for admission and sought to attack the interviewer's method and neutrality. The circuit court excluded testimony about the interviewer's method and technique. The circuit court also prohibited Clark from offering an expert witness's opinion on whether the interview was conducted appropriately.

For reasons we will explain, we find the circuit court did not abuse its discretion. We respectfully disagree with the rest of Clark's arguments and affirm the judgment.

## FACTS

Child is a daughter of Clark's former girlfriend (we assume the relationship has ended). Child said Clark picked her up out of bed one night, carried her downstairs in her mother's house, pulled down her pants, and "peed in [her] private[s]." She disclosed this to her father, who took her to the hospital. Law enforcement became involved as well.

The recorded interview occurred at the Julie Valentine Center. Child was around five years old. By the time of trial, she was seven.

## Pretrial proceedings

As already noted, Clark did not object to the interview coming in as evidence. The interview was discussed at length during pretrial motions. Clark said he consented to the interview being played for the jury as long as both his accuser testified and the interviewer testified. He said that while he was not stipulating to the interview's admission, he was not objecting either.

After that, the discussion turned to the various factors listed in section 17-23-175(B) of the South Carolina Code (2014) that the court may consider in determining whether an interview like this has the "guarantees of trustworthiness" required for admission into evidence. Clark said he could not stipulate that the interview satisfied the factors, but he reiterated his earlier statement that he would not object to the interview if the court concluded it satisfied the standard for admission.

A few minutes later, while arguing that the circuit court should allow the jury to have a transcript of the interview, Clark briefly mentioned that he wanted the transcript admitted into evidence so he could argue that the manner in which the interviewer asked questions was unreliable. He did not explain why he believed the questions had been asked improperly. And, as noted, Clark was seeking to admit the transcript, not to exclude the interview. After watching the interview, the circuit court found the interview contained particularized guarantees of trustworthiness as outlined in the statute.

**Witness testimony about the interview**

Child was the first witness at trial. The interviewer was the second. The circuit court admitted the recorded interview as evidence during the interviewer's direct examination. At Clark's request, the court postponed the interviewer's cross-examination until after the interview had been played for the jury.

Cross-examination quickly revealed that Clark's defense involved arguing the interviewer had used improper questions resulting in a false accusation. An extensive proffer followed after Clark asked the interviewer whether the Julie Valentine Center was a "child advocacy center" and whether a center that advocates for children can perform a neutral and unbiased interview of a child. The State objected and argued that the interviewer was not permitted to testify about the specifics of the interview or about interviewing techniques because answers to those questions could improperly bolster the accuser's testimony.

Clark argued his purpose was not to bolster but to attack. Outside of the jury's presence, Clark asked the interviewer questions like whether it was best practice to ask non-leading and open-ended questions when interviewing children. Clark and the interviewer also debated whether particular questions were (or were not) leading questions.

The circuit court ruled that it would follow recent precedent explaining that the jury was not to hear testimony about interviewing methods and techniques. *See State v. Anderson*, 413 S.C. 212, 221, 776 S.E.2d 76, 80 (2015). The next day, when Clark argued he would not have consented to the interview's admission if he had known he would not be able to attack the interviewer's methodology, the circuit court noted its pretrial ruling that the interview met the factors for admission and that Clark had not moved to redact any portions of the recording.

The interview was featured in the testimony of two additional witnesses. Shauna Galloway-Williams, the State's expert in child abuse dynamics, testified on cross-examination that interviewers should generally use non-leading and open-ended questions. Dr. Amanda Salas, Clark's proposed expert witness, gave similar testimony, but additionally offered her professional opinion that this interview contained a substantial amount of suggestive techniques that influenced Child's disclosure. The circuit court heard all of Dr. Salas's testimony in camera and excluded her testimony from the jury's consideration. This was based on the finding that method and technique testimony was not to go to the jury.

**Other issues**

Clark's hearsay/directed verdict issue centers on the testimony of an emergency department nurse. At trial, Child could not give a time period for when the alleged abuse occurred. The nurse's testimony about her conversation with Child at the hospital was the only testimony that the incident occurred within the one-month date range alleged in the indictment. The circuit court admitted this testimony under Rule 803(4), SCRE—the medical diagnosis exception to the rule against hearsay—based on the nurse's explanation that the timing of the sexual abuse would have aided in determining what treatment Child received.

The *Brady* issue involves a police officer's investigation materials from Child's hospital visit. An officer from the Pickens Police Department was dispatched to the hospital. The officer's body camera recorded parts of her conversations with Child and various family members. The body camera footage was not admitted into evidence, but on cross-examination, Clark asked the officer about a reference in the video to someone named "Ashley." No one recognized the name Ashley. The officer did not recall telling anyone she had a reference to Ashley in her handwritten notes. The officer also did not have her handwritten notes or know where they were. The officer testified that she transferred all the information from her notes to her final report but confirmed the report did not mention Ashley.

Clark argued the State committed a *Brady* violation by not sending the officer's investigative notes, which Clark claimed had a strong likelihood of being *Brady* material, because of the officer's reference to Ashley. Clark argued that an inference existed that the notes were favorable to him because they were not provided to the defense. The State argued that it had tried to obtain the notes, but the officer no longer possessed them. The circuit court stated it would consider giving a spoliation charge but could not find a *Brady* violation when there was no evidence the officer's notes were of any exculpatory or impeachment value.

The jury found Clark guilty as indicted. The circuit court sentenced him to twenty-five years' imprisonment.

**ISSUES**

1. Whether the circuit court erred in preventing Clark from cross-examining the interviewer about interviewing techniques.

2. Whether the circuit court erred in admitting the interview into evidence.

3. Whether the circuit court erred in prohibiting Clark's expert witness from testifying.

4. Whether the circuit court should have excluded the nurse's testimony as inadmissible hearsay and thus granted a directed verdict based on the lack of any evidence the incident occurred within the dates specified in the indictment.

5. Whether the circuit court erred by not finding a *Brady* violation based on the loss of the police officer's interview notes.

**THE INTERVIEWER'S CROSS-EXAMINATION**

Clark argues the circuit court erred in preventing him from cross-examining the interviewer about her methodology and "suggestive interviewing technique." He asserts recent decisions—particularly *Anderson* and *State v. Kromah*, 401 S.C. 340, 737 S.E.2d 490 (2013)—do not preclude his cross-examination because he was not seeking the interviewer's opinion on the alleged victim's truthfulness. Instead, he says, he was seeking to highlight the ways the interviewer may have inadvertently affected the nature and scope of the disclosure.

Our disagreement with Clark's argument is driven by the fact that the law contemplates challenges to the interview method being hashed out in front of the judge and away from the jury. The statute states a recorded interview is only admissible if the court finds, after a hearing, "that the totality of the circumstances surrounding the making of the statement provides particularized guarantees of trustworthiness." S.C. Code Ann. § 17-23-175(A)(4) (2014). Our supreme court has even specified the procedure. *Anderson* explains the interviewer should be called to testify in camera. 413 S.C. at 220, 776 S.E.2d at 80. There, the interviewer "must" testify to establish his or her training and background, the method or technique employed in the interview, and anything else relevant to the statute's "trustworthiness" factors. *Id*. If the court finds the interview admissible, the interviewer's "sole purpose" in front of the jury is to lay the foundation for the interview. *Id*. at 220-21, 776 S.E.2d at 80. The discussion of techniques, including that the child was instructed about the importance of telling the truth, is not allowed. *Id.* at 221, 776 S.E.2d at 80. Although this testimony helps establish the "guarantees of trustworthiness," it necessarily (albeit implicitly) bolsters the child's credibility. *Id*.

That procedure was not followed here. The interviewer did not testify in camera before the recording was admitted. Clark did not argue against any of the trustworthiness factors. He proposed to attack them not in front of the judge but the jury. Our reading of *Anderson* convinces us that he cannot do so because whether particular questions were leading questions and whether the interviewer's method was appropriate are part of the determination of whether the interview satisfies the statute's criteria for admission. That is a question for the judge, not the jury.

The reason why is driven by concerns we have mentioned a few times already. Clark is of course right that he is not trying to bolster, but if he can attack method and training, the State must necessarily dispute Clark's viewpoint, and it is difficult to envision how the State could dispute the attack *without* bolstering. A cross-examination focused on whether the interview used suggestive interviewing techniques is nothing if not an invitation for the State to give counter testimony on redirect. We do not quarrel with the idea that a bad technique might produce a flawed disclosure of abuse, but that is not a license to do battle in front of the jury over whether interview technique is good or bad. The obvious suggestion in that battle is that interview technique is a reliable proxy for whether the child is telling the truth.

The circuit court allowed testimony on issues identified as acceptable in *Kromah*. 401 S.C. at 360, 737 S.E.2d at 500-01 (explaining the interviewer could discuss the

circumstances of the interview, personal observations of the child, and events within the interviewer's personal knowledge). It declined to allow questioning on topics prohibited by precedent; instructing instead that the interview was "fair game" for closing argument. This approach was sound and therefore not an abuse of discretion.

**INTERVIEW'S ADMISSION AS EVIDENCE**

Clark argues that the interview did not provide particularized guarantees of trustworthiness, that Child did not demonstrate competency to testify, and that the court therefore erred in admitting the interview as evidence.

These arguments are not preserved for our review. Clark did not raise an issue with the circuit court's "trustworthiness" ruling until the day *after* the recording was admitted into evidence and played for the jury. Also, and as noted at the beginning of this opinion, the only position Clark took before the circuit court ruled on the video's admission was that he would not stipulate to the factors. Many cases, including *State v. Rogers*, 361 S.C. 178, 183, 603 S.E.2d 910, 912-13 (Ct. App. 2004), specify that preserving issues requires raising issues to the trial court, in a timely manner, and with specificity.

We hasten to add that our ruling would not change even if we reviewed the issue on the merits. Clark is right that Child made some odd statements in the interview. She claimed Clark had cameras in his eyes and that she had previously driven her mother to the hospital. Both statements were obviously not correct. Even so, we do not see a basis for finding the circuit court abused its discretion in concluding that Child's allegation of abuse in the interview satisfied the standard for admission. The disclosure was detailed, and there does not appear to be any dispute that Child described things that would be beyond the understanding and experience of someone her age. Like the circuit court, we respectfully disagree with Clark's argument that the interview employed leading or suggestive questioning. Thus, even if we reached the merits, we would still affirm.

**CLARK'S EXPERT**

We deal with this issue quickly because our discussion of the interviewer's cross-examination controls. Clark argues that Dr. Salas was qualified under Rule 702, SCRE,[1] to be an expert witness and her testimony would have assisted the jury

---

[1] "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an

in understanding the evidence.  He reads case law as prohibiting experts from opining on a child's veracity and argues that he is seeking merely to challenge Child's credibility, which he sees as different than giving an opinion on whether an allegation is true.

Much of the testimony Clark wished to elicit from Dr. Salas was a direct comment on the credibility of the statements in the interview.  She testified that proper interview technique allowed the interviewer to get "the child's information, not something I've implanted in the child."  She testified that her work as an expert involved reviewing interviews to form opinions "in terms of the reliability of an interview . . . [and] whether it was following best practices or not."  She opined that the interviewer suggested what Child's answers should be, that Child was looking for positive reinforcement, and that Child's statements during the interview "were not her own answers but were those of the interviewer through the use of improper methodology."  The precedents in this area cannot be reasonably read to support allowing this sort of testimony.  In addition to the cases cited in the previous discussion, we add *State v. Chavis*, which noted that no evidence demonstrated that an expert could draw reliable conclusions from evaluating this sort of recorded interview.  412 S.C. 101, 107-08, 771 S.E.2d 336, 339 (2015).

Clark also argues he was treated differently from the State because the State was allowed to offer an expert and he was not.  The disparity is the result of the fact that the State's expert offered proper testimony and Clark's did not.  The State offered an expert in "child abuse dynamics" to testify about the peculiar behavior often exhibited by victims of abuse.  This sort of testimony has been recognized as appropriate.  *Anderson*, 413 S.C. at 218, 776 S.E.2d at 79.  The State's expert had not watched the recording, did not give her opinion on the interviewer's methodology, and did not offer any sort of opinion about whether statements made in the interview were truly "the child's statements" as opposed to things that had been "planted."  If she had gotten near these areas, we have no doubt the circuit court would have excluded the testimony.

**HEARSAY/DIRECTED VERDICT**

Clark argues that the nurse's testimony about the time of the alleged abuse was improperly admitted hearsay and that there was no evidence of penetration, which is an element of first-degree CSC.

---

expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."  Rule 702, SCRE.

The transcript—particularly the circuit court's questioning of the nurse—supports the circuit court's decision that the timing of the sexual abuse aided medical staff in determining what treatment Child would receive. *See* Rule 803(4), SCRE (providing "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are not excluded by the hearsay rule, even though the declarant is available as a witness). The evidence of penetration came from the recorded interview. In the light most favorable to the State, evidence was presented on all of the elements necessary to prove Clark's guilt. *See* S.C. Code Ann. § 16-3-655(A)(1) (2015) ("A person is guilty of criminal sexual conduct with a minor in the first degree if . . . the actor engages in sexual battery with a victim who is less than eleven years of age . . . .").

## *BRADY* VIOLATION

Clark argues the circuit court erred in failing to find a *Brady* violation because some evidence was delayed from production until after the trial began, other evidence (particularly the officer's notes) was allegedly destroyed after it had been requested, and the circuit court could not determine whether the missing evidence would have been exculpatory.

Among other things, a *Brady* claim requires the withheld information be material to guilt or punishment. *See Sheppard v. State*, 357 S.C. 646, 659, 594 S.E.2d 462, 470 (2004) ("Pursuant to *Brady*, the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."), *overruled on other grounds by State v. Burdette*, 427 S.C. 490, 504 n.3, 832 S.E.2d 575, 583 n.3 (2019). The evidence does not suggest that the officer's lost notes, which were largely transferred to her report except for a passing reference to Ashley, contained information favorable to Clark or were material. None of the witnesses at trial, including Child's parents, knew who Ashley was. Child did not reference Ashley in the recorded interview or in her trial testimony. These two things in conjunction make it unlikely that Ashley had any information about Child's sexual abuse (or that Ashley even existed). Clark cross-examined witnesses about Ashley at trial. Thus, we agree with the circuit court that Clark did not establish a *Brady* violation. *See State v. Gathers*, 295 S.C. 476, 481, 369 S.E.2d 140, 143 (1988) ("In determining the materiality of nondisclosed evidence, [an appellate court] will consider it in the context of the entire record."); *id*. ("The State's

failure to disclose information warrants a reversal as a *Brady* violation only if the omission deprived the defendant of a fair trial.").  We note the circuit court offered to give a spoliation instruction.  We mention this because we believe it demonstrates the circuit court carefully considered the argument and deemed it unlikely that the missing information was material and warranted the heavy remedy of dismissal.

**CONCLUSION**

Based on the foregoing, Clark's convictions and sentences are

**AFFIRMED.**

**KONDUROS and VINSON, JJ., concur.**