725 S.E.2d 139

The STATE, Respondent,

v.

Jimmy Paul McKERLEY, Appellant.

No. 4957.

Court of Appeals of South Carolina.

Heard Jan. 11, 2012.

Decided March 28, 2012.

Rehearing Denied May 21, 2012.

462

Chief Appellate Defender Robert M. Dudek, of Columbia, and Public Defender E. Charles Grose, Jr., of Greenwood, for appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Christina J. Catoe, all of Columbia; and Solicitor Jerry W. Peace, of Greenwood, for respondent.

FEW, C.J.

Jimmy Paul McKerley appeals his convictions for criminal sexual conduct with a minor in the first degree and lewd act upon a child under sixteen. McKerley's primary argument is that the trial court erred in permitting an expert in forensic interviewing to give testimony that bolstered the credibility of

the victim. We agree. We reverse McKerley's convictions and remand for a new trial.

## I.  Facts and Procedural History

McKerley was tried for sexually abusing his daughter, who was seven years old at the time of the alleged incidents. The victim testified in detail as to the sexual abuse she claimed McKerley committed. The State's next witness was Heather Smith, who testified regarding two interviews she conducted with the victim. The trial court qualified Smith as an expert in forensic interviewing and child abuse assessment. Smith described generally what forensic interviewers do and the specific procedures they follow in an investigation into possible child sexual abuse. She then explained what she did in this case and the conclusions she reached regarding the alleged abuse by McKerley. McKerley objected to numerous statements within Smith's testimony, arguing the statements should be excluded because they commented on the credibility of what the victim stated in the interviews and improperly bolstered her testimony at trial.

The jury found McKerley guilty. The trial court sentenced him to twenty-five years in prison for the criminal sexual conduct conviction and fifteen years concurrent for the lewd act conviction.

## II.  *State v. Jennings*

■   McKerley argues on appeal that the trial court erred in admitting any of Smith's testimony. In one particular statement, Smith improperly testified "both interviews that I conducted with her, I found them to be compelling for sexual abuse." In *State v. Jennings*, 394 S.C. 473, 716 S.E.2d 91 (2011), our supreme court held a virtually identical statement by a forensic interviewer—each child " 'provide[d] a compelling disclosure of abuse by [appellant]' "—was inadmissible for the same reason argued by McKerley. 394 S.C. at 480, 716 S.E.2d at 94 (quoting the forensic interviewer). The State argues *Jennings* is distinguishable from this case because the offending statement in *Jennings* was contained in a written report, whereas the statement here was introduced as live

testimony. We find *Jennings* controlling and hold the trial court erred in admitting this portion of Smith's testimony.

However, the State argues this case is distinguishable from *Jennings* in an additional manner—the other evidence of guilt in this case is overwhelming and therefore the error was harmless. To address the State's harmless error argument, we are required to consider the remainder of McKerley's objections to Smith's testimony, in the context of the other proof of McKerley's guilt. *See* 394 S.C. at 482, 716 S.E.2d at 96 (Kittredge, J., concurring) (stating the determination of harmless error is "necessarily context dependent").

### III. Forensic Interviewer's Testimony

The assessment of witness credibility is within the exclusive province of the jury. *State v. Wright*, 269 S.C. 414, 417, 237 S.E.2d 764, 766 (1977). Therefore, witnesses are generally not allowed to testify whether another witness is telling the truth. *See Burgess v. State*, 329 S.C. 88, 91, 495 S.E.2d 445, 447 (1998) (holding it is improper "pitting" to ask a witness "to comment on the truthfulness ... of an adverse witness"); *State v. Sapps*, 295 S.C. 484, 485–86, 369 S.E.2d 145, 145–46 (1988) (holding it was improper for solicitor to "ask[ ] appellant if each of the other three witnesses was lying"). Similarly, witnesses may not improperly bolster the testimony of other witnesses. *See Smith v. State*, 386 S.C. 562, 569, 689 S.E.2d 629, 633 (2010) (finding a "forensic interviewer's ... opinion testimony improperly bolstered the Victim's credibility"). In *Jennings*, Justice Pleicones stated: "For an expert to comment on the veracity of a child's accusations of sexual abuse is improper." 394 S.C. at 480, 716 S.E.2d at 94; *see also State v. Hill*, 394 S.C. 280, 294, 715 S.E.2d 368, 376 (Ct.App.2011) ("The law is clear that it is improper for a witness to give testimony as to his or her opinion about the credibility of a child victim in a sexual abuse matter.").

These principles are incorporated into Rule 608(a) of the South Carolina Rules of Evidence. The rule provides that opinion evidence regarding credibility "may refer only to character for truthfulness or untruthfulness," and "evidence of truthful character is admissible only after the character of the

witness for truthfulness has been attacked by opinion or reputation evidence or otherwise." Even a witness permitted to give an opinion under Rule 608(a) must restrict the opinion to "character for truthfulness," and may not testify whether the witness believes a specific statement or account given by another witness. *See* 1 Kenneth S. Broun et al., *McCormick on Evidence* § 43, at 205 (6th ed. 2006) (stating in relation to Rule 608(a), FRE, "the opinion must relate to the prior witness's character trait for [ ]truthfulness, not the question of whether the witness's specific trial testimony was truthful"). Thus, to the extent Smith's testimony included comments on the credibility of the victim's account of the alleged sexual assault, the trial court erred in admitting it.

■ Smith never testified directly that she believed what the victim stated in her interviews or in her testimony. McKerley argues, however, that there is no way to interpret Smith's testimony other than as her opinion that the victim was telling the truth. We agree. This is the premise of the supreme court's decision in *Jennings*. As Justice Pleicones stated: "There is no other way to interpret the language used in the reports other than to mean the forensic interviewer believed the children were being truthful." 394 S.C. at 480, 716 S.E.2d at 94; *see also* 394 S.C. at 483, 716 S.E.2d at 96 (Kittredge, J., concurring) (referring to the forensic interviewer's statement in the reports as "patently inadmissible evidence"). Smith's testimony in this case describing what forensic interviewers do demonstrates that virtually all of her testimony indicates she believed the victim was truthful, and thus is inadmissible for the same reason identified by the court in *Jennings*. Smith explained:

> We want to be able to, ... after assessing [the child's] behavior and what they are stating in an interview, look at that along with the other information that we may have had at the beginning of the interview and *give an opinion as to whether we think something happened....*

Smith's "opinion as to whether [she thinks] something happened" is nothing other than her inadmissible opinion as to whether the victim was telling the truth.

In addition to testifying "I found [both interviews with the victim] to be compelling for sexual abuse," Smith testified as follows:

- "we are looking for accuracy of information" given by the victim;

- "we are going to ... make sure that what the child is telling us is based on something they would have experienced on their own body or that they would have seen or heard, the sensory information";

- "those statements have a level of detail that ... they would be able to tell [only] if something were to have happened";

- "we are also looking at ... are there other possible reasons, are there other possible explanations";

- "we are looking to see if[ ] [this] could ... be explained in another way";

- "we are looking to be sure it adds up";

- "we are looking to see if what they tell us throughout the interview is the same from the beginning to the end";

- "we are also looking at their behavior and the way they are expressing themselves in the interview ... their behavior and their language";

- in forming her "opinion as to whether ... something happened," she considered whether the victim's statements were "consistent with the other information" she has on the case;[1] and

- in forming her "opinion as to whether ... something happened," she considered "does this child appear to be giving statements that are similar to, in my experience, in my training and what I have learned, similar to what other children with the same experience may have had."

Finally, in response to a question asking her to "explain what a compelling finding would be," she stated:

---

[1]. This statement is similar to another statement found inadmissible in *Jennings*—that each of the children provided details consistent with the background information received from their mother, the police report, and the other children. 394 S.C. at 480, 716 S.E.2d at 94.

The compelling findings are the things that we look at, that we talked about looking at earlier in terms of how the disclosure comes about in the interview with me; whether it is detailed, does it have consistency, does it have the sensory level of detail that a child typically wouldn't have, or *only would have if something had happened to them.*

In this particular case, none of this testimony has any relevance except insofar as it informs the jury Smith believes the story told by the victim. As Justice Pleicones explained in *Jennings,* "[t]here is no other way to interpret the language used in [Smith's testimony] other than to mean [she] believed the [victim was] being truthful." 394 S.C. at 480, 716 S.E.2d at 94. As Justice Kittredge stated in his concurring opinion, Smith's testimony is "patently inadmissible evidence." 394 S.C. at 483, 716 S.E.2d at 96.

## IV. Harmless Error

■ We disagree with the State's argument that the error in allowing Smith to testify was harmless. "To deem an error harmless, this court must determine 'beyond a reasonable doubt the error complained of did not contribute to the verdict obtained.'" *State v. Fonseca,* 383 S.C. 640, 650, 681 S.E.2d 1, 6 (Ct.App.2009) (quoting *Taylor v. State,* 312 S.C. 179, 181, 439 S.E.2d 820, 821 (1993)), *aff'd,* 393 S.C. 229, 711 S.E.2d 906 (2011); *see also State v. Baccus,* 367 S.C. 41, 55, 625 S.E.2d 216, 223 (2006) ("When guilt is conclusively proven by competent evidence, such that no other rational conclusion could be reached, this Court will not set aside a conviction for insubstantial errors not affecting the result."). In light of Smith's extensive inadmissible testimony bolstering the credibility of the victim, considered in the context of the other testimony and evidence of McKerley's guilt, we cannot say the erroneous admission of Smith's testimony did not contribute to the jury's decision.

## V. Other Issues

McKerley raises several other issues on appeal. In light of our decision to reverse and remand based on Smith's testimony, we do not address those issues. *See State v. Boswell,* 391 S.C. 592, 606 n. 12, 707 S.E.2d 265, 272 n. 12 (2011) (declining

to address other issues when decision on prior issue was dispositive of appeal).

## VI. Conclusion

For the reasons explained, McKerley's conviction is **RE-VERSED,** and the case is **REMANDED** for a new trial.

THOMAS and KONDUROS, JJ., concur.