**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

The State, Respondent,

v.

Ronasha Taylor, Appellant.

Appellate Case No. 2012-213228

_____

Appeal From Spartanburg County
Lee S. Alford, Circuit Court Judge

_____

Unpublished Opinion No. 2015-UP-173
Heard February 11, 2015 – Filed April 1, 2015

_____

**REVERSED AND REMANDED**

_____

Andrew Robert de Holl, of Womble Carlyle Sandridge & Rice, LLP, of Charleston, and Chief Appellate Defender Robert Michael Dudek, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Assistant Attorney General Christina Catoe Bigelow, Assistant Attorney General Kelly W. Hall, and Assistant Attorney General Bethany Bedenbaugh Miles, all of Columbia, for Respondent.

_____

**PER CURIAM:**  Ronasha Taylor appeals her conviction of six counts of lewd act on a minor, involving six child victims.  Taylor asserts the trial court erred in (1) allowing two forensic interviewers, McMillan and Weber, to give impermissible vouching testimony as expert witnesses; (2) allowing two forensic interviewers to give testimony that impermissibly vouched for the credibility of the six children; (3) admitting the forensic interviews of four of the children because they did not have particularized guarantees of trustworthiness; and (4) allowing the testimony of one of the children by closed circuit television because the trial court failed to make the requisite findings for the procedure and there was insufficient evidence the procedure was necessary.  We reverse and remand for a new trial.

1.      We find the trial court erred in admitting the testimony of the forensic assessors,[1] who were erroneously qualified as experts.  "The assessment of witness credibility is within the exclusive province of the jury." *State v. McKerley*, 397 S.C. 461, 464, 725 S.E.2d 139, 141 (Ct. App. 2012).  "Therefore, witnesses are generally not allowed to testify whether another witness is telling the truth." *Id.* "Similarly, witnesses may not improperly bolster the testimony of other witnesses." *Id.*  Additionally, though experts are allowed to give an opinion, they are not permitted to offer an opinion regarding the credibility of others, and when a witness who lends credibility to the victim's allegations is qualified as an expert, the impermissible harm is compounded.  *State v. Kromah*, 401 S.C. 340, 358, 737 S.E.2d 490, 499 (2013).  "For an expert to comment on the veracity of a child's accusations of sexual abuse is improper." *State v. Jennings*, 394 S.C. 473, 480, 716 S.E.2d 91, 94 (2011).

---

[1] Although it appears by its briefed argument that the State attempts to draw some distinction between qualification as an expert "forensic interviewer" and qualification as an expert in the area of "child abuse assessment," the testimony of McMillan and Weber belies this argument.  During voir dire, when asked the difference between a forensic assessment and a forensic interview, McMillan clarified a forensic assessment or evaluation refers to the interviews spread out over time, while a forensic interview is "that one time session or that one time interview."  Then, during direct examination following the court's qualification of her as an expert, McMillan testified a forensic interview is "a one-time face-to-face interview" while a forensic evaluation is "two or more interviews or two or more sessions to . . . complete a full interview."  Additionally, Weber testified she was involved in the field of "child abuse assessment" as "a forensic evaluator." Accordingly, it is a distinction without a difference.

In *Kromah*, our supreme court addressed the admission of vouching testimony from a forensic interviewer who had been qualified as an expert witness. The court first noted that a forensic interviewer is an individual "specially trained to talk to children when there is a suspicion of abuse or neglect," that "[t]he job of the interviewer is not to provide therapy, but to collect facts," and "[i]t has been said that a forensic interviewer's purpose is to prepare for trial." 401 S.C. at 357, 737 S.E.2d at 499. There, the court extensively addressed the matter of the impropriety of qualifying a forensic interviewer as an expert, stating in part as follows:

> In considering the ongoing issues developing from [the use of forensic interviewers] at trial, we state today that we can envision no circumstance where their qualification as an expert at trial would be appropriate. Forensic interviewers might be useful as a tool to aid law enforcement officers in their initial investigative process, but this does not make their work appropriate for use in the courtroom. The rules of evidence do not allow witnesses to vouch for or offer opinions on the credibility of others, and the work of a forensic interviewer, by its very nature, seeks to ascertain whether abuse occurred at all, i.e., whether the victim is telling the truth, and to identify the source of the abuse.

*Id.* at 357 n.5, 737 S.E.2d at 499 n.5. The court further stated, "[A]lthough an expert's testimony theoretically is to be given no more weight by a jury than any other witness, it is an inescapable fact that jurors can have a tendency to attach more significance to the testimony of experts." *Id.* at 357, 737 S.E.2d at 499. "The label of expert should be jealously guarded by the court and never loosely bandied about." *Id.* Additionally, *Kromah* specifically cautioned a forensic interviewer should avoid making certain statements at trial, including any statement that the child was told to be truthful, any statement that indirectly vouches for a child's believability, any statement indicating to the jury that the forensic interviewer believes the child's allegations, or any statement that gives an opinion that the child's behavior indicates the child was telling the truth. *Id.* at 360, 737 S.E.2d at 500.

At trial, McMillan and Weber gave the following testimony that violates the parameters set forth in *Kromah*: Weber testified that in order to safeguard against third-party influence with Child 4, she "let[] him know that he can correct [her] and

that it's important to tell the truth"; McMillan testified Child 1, Child 2 and Child 3, and Weber testified Child 4, Child 5 and Child 6, gave information that was verified by or consistent with what their parents had provided; McMillan believed Child 2's disclosure of abuse was not affected in any way by third-party influence and Weber believed Child 4's disclosure was not the result of any third-party influence or suggestibility; in Child 5's interview, Weber used safeguards to prevent any type of influence by checking to see if he used age-appropriate language, to see if there was any alternative explanation, and if there was any misunderstanding she attempted to figure out and clarify the truth behind what he was saying; and McMillan testified Child 2 exhibited self-correction in her interviews and that self-correction means a child is "applying truthfulness." Most importantly, after testifying that each of the children made disclosures of abuse, both McMillan and Weber testified they recommended each child participate in therapy. Additionally, as to all three of the children she interviewed, McMillan indicated she referred the children to a licensed mental health clinician. In her testimony concerning Child 1, McMillan further specified she talked to the parents about taking the child to a mental health clinician "who had education, training, and experience working with children [who] had been sexually abused." Further, as to the three children she interviewed, Weber also testified she recommended each child have no contact with Taylor. *See State v. Chavis*, Op. No. 27491 (S.C. Sup. Ct. filed Feb. 4, 2015) (Shearouse Adv. Sh. No. 5 at 20) (finding the trial court erred in admitting testimony of a forensic interviewer qualified as an expert regarding her recommendation that the victim not be around the appellant, because such testimony could only be interpreted as the forensic interviewer "believing Victim's claim that Appellant sexually abused her," and "[t]his type of bolstering, especially when made by a witness imbued with imprimatur of an expert witness, improperly invades the province of the jury"). Further, the forensic interviewers gave general testimony expressing their methods of evaluating the children, which may have indirectly conveyed that the children were truthful. *See McKerley*, 397 S.C. at 465-67, 725 S.E.2d at 142-43 (finding the following testimony of a forensic interviewer, similar to that in the case at hand, to be inadmissible opinion testimony that the victim was truthful, as none of this testimony had any relevance except insofar as it informed the jury the forensic interviewer believed the story told by the victim: "We want to be able to, . . . after assessing [the child's] behavior and what they are stating in an interview, look at that along with the other information that we may have had at the beginning of the interview and *give an opinion as to whether we think something happened* . . ."; "'we are looking for accuracy of information' given by the victim"; "we are also looking at . . . are there other possible reasons, are there other possible explanations"; "we are looking to see if[ ] [this] could . . . be explained in another way"; "we are looking to see if

what they tell us throughout the interview is the same from the beginning to the end"; "we are also looking at their behavior and the way they are expressing themselves in the interview . . . their behavior and their language"; and "in forming her 'opinion as to whether . . . something happened,' she considered whether the victim's statements were 'consistent with the other information' she has on the case," which is similar to a statement found inadmissible in other case law "that each of the children provided details consistent with the background information received from their mother, the police report, and the other children"). There is no other way to interpret McMillan and Weber's testimony other than it was their opinion that the children were telling the truth. *See Jennings*, 394 S.C. at 480, 716 S.E.2d at 94 ("There is no other way to interpret the language used in the reports other than to mean the forensic interviewer believed the children were being truthful."). *Kromah* makes clear that qualification of a forensic interviewer at trial is inappropriate and when a forensic interviewer is qualified as an expert, the impermissible harm of rendering opinion testimony regarding the credibility of others is compounded by the witness's qualification as an expert. McMillan and Weber's testimony undoubtedly violated the prohibitions set forth in *Kromah*, and Taylor was prejudiced thereby.[2]

Further, we find the admission of their testimony as experts was not harmless. Our courts have determined the admission of evidence from a forensic interviewer that improperly vouched for the veracity of child victims did not amount to harmless error (1) when there was no physical evidence but only the children's accounts of what occurred and other hearsay evidence of their accounts, and (2) when extensive testimony bolstering the credibility of the child victim was improperly admitted. *See Jennings*, 394 S.C. at 480, 716 S.E.2d at 94-95 (finding the trial court's admission of reports of a forensic interviewer did not amount to harmless error as there was no physical evidence presented, the only evidence presented by

---

[2] We disagree with the State's error preservation argument. Defense counsel's objection to the qualification of McMillan and Weber as experts in the field of child abuse assessment and child abuse forensic assessment properly preserved the matter for review. Defense counsel argued forensic interviewing was not a valid expert field. This is the exact situation *Kromah* sought to prohibit, but *Kromah* was not issued until after Taylor's trial. As our supreme court stated in *State v. Tapp*, "[w]hile our preservation rules require that objections to the admissibility of evidence be specific, . . . they most certainly do not require clairvoyance." 398 S.C. 376, 385-86, 728 S.E.2d 468, 473 (2012).

the State was the children's accounts of what occurred and other hearsay evidence of the children's accounts, and the children's credibility was the most critical determination of the case); *McKerley*, 397 S.C. at 467, 725 S.E.2d at 143 ("In light of [the forensic interviewer's] extensive inadmissible testimony bolstering the credibility of the victim, considered in the context of the other testimony and evidence of McKerley's guilt, we cannot say the erroneous admission of [the forensic interviewer's] testimony did not contribute to the jury's decision."). Here, the only evidence of the lewd acts was from the children's accounts of what occurred—as reflected in their testimony and forensic interviews and disclosure of abuse to their parents and the forensic interviewers—and Taylor denied having committed the acts of abuse. As in *Jennings*, there was no physical evidence to support the commission of any lewd acts on the children and, as in *McKerley*, extensive testimony from the forensic interviewers that bolstered the testimony of the children was admitted into evidence. Because the children's credibility was the most critical determination and extensive bolstering testimony was given from the forensic interviewers who were inappropriately qualified as experts, we cannot say, beyond a reasonable doubt, that the error did not contribute to the verdict. *State v. Douglas*, 369 S.C. 424, 432, 632 S.E.2d 845, 849 (2006).("Error is harmless beyond a reasonable doubt where it did not contribute to the verdict obtained."); *State v. Watts*, 321 S.C. 158, 165, 467 S.E.2d 272, 277 (Ct. App. 1996) ("In applying the harmless error rule, the court must be able to declare the error had little, if any, likelihood of having changed the result of the trial and the court must be able to declare such belief beyond a reasonable doubt.").

2.　　In light of our decision to reverse and remand for a new trial based on the above, we decline to reach the remaining issues. *See State v. Mekler*, 379 S.C. 12, 17, 664 S.E.2d 477, 479 (2008) (affirming the decision to grant a new trial and declining to address another ground for reversal, noting whether the issue would arise on retrial and its resolution would depend upon the evidence and testimony presented, and would therefore be for the trial court's consideration); *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues on appeal when its determination of a prior issue is dispositive).

**REVERSED AND REMANDED.**

**HUFF, SHORT, and KONDUROS, JJ., concur.**