**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

The State, Respondent,

v.

Dalonte Green, Appellant.

Appellate Case No. 2015-001059

———

Appeal From Hampton County
Perry M. Buckner, III, Circuit Court Judge

———

Unpublished Opinion No. 2018-UP-092
Heard December 5, 2017 – Filed February 21, 2018

———

**REVERSED**

———

Chief Appellate Defender Robert Michael Dudek, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General Susannah Rawl Cole, all of Columbia; and Solicitor Isaac McDuffie Stone, III, of Bluffton, for Respondent.

———

**PER CURIAM:** Dalonte Green appeals his conviction of murder, arguing the circuit court erred in (1) excluding the testimony of Sergeant Johnny Wells under

the third-party guilt rule and (2) refusing to allow defense counsel to argue for the testimony's admissibility after ruling it was not admissible. We reverse.

## FACTUAL/PROCEDURAL BACKGROND

On December 1, 2012, police officers responded to a shooting at a nightclub and found Xavier Rodd (Victim) bleeding profusely from a gunshot wound to his mouth, which lacerated his jugular vein and proved to be fatal. Multiple officers claimed Victim could not speak due to his injury. Although he attempted to write the name of the shooter, Victim's handwriting was illegible because his wound rendered him weak and delirious. Ten days after the shooting, police discovered a plaid shirt with gunshot residue at an abandoned residence, approximately thirty-five feet from the nightclub.

At trial, witnesses testified to events surrounding the shooting. Markeisha Smith testified she saw Green at the nightclub wearing the same plaid shirt found by police. Clarence Riley testified Green was wearing a white shirt and had a plaid shirt around his shoulders while outside the nightclub; however, after the shooting, Riley recalled Green wore only the white shirt. Riley testified he gave Green a gun outside the nightclub. Moreover, Taylor McQuire testified he saw Green with a gun in the nightclub parking lot and heard a gunshot. Riley claimed Green gave the gun back to him that night, but the next day, Riley disposed of the gun because he heard Green "did something with [it]." Additionally, Riley stated that minutes after the shooting, he, Green, Green's girlfriend, and another female drove away from the nightclub together. Riley recalled Green was out of breath "like he was running or something" and Green's girlfriend was "[p]icking something off his shirt."

Out of the presence of the jury, Green proffered the testimony of Sergeant Wells as to Victim's dying declaration under Rule 804(b)(2), SCRE.[1] Sergeant Wells testified that, while waiting for backup from other officers, he discovered Victim walking down the street when Victim told him, "I got shot."

---

[1] "In a prosecution for homicide or in a civil action or proceeding, a statement made by a declarant while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be impending death" is not excluded by the hearsay rule if the declarant is unavailable as a witness. Rule 804(b)(2), SCRE.

As Sergeant Wells and the other officers sought to identify the shooter, Victim started to fall, prompting Sergeant Wells to grab him. Sergeant Wells described Victim was difficult to understand because of the amount of blood coming from his mouth; nevertheless, Sergeant Wells believed Victim was attempting to convey a message. Sergeant Wells testified,

> In my experience with law enforcement and dealing with this type of situation, it appeared to me that he was about to die. So at that time, I never asked him who shot him, there was another officer who asked him who shot him. But I was there; I asked him d[id] he believe in God. And at that time, he spoke clearer than I have ever heard him speak during the whole confrontation. His response was, 'Yeah. Yeah, yeah, yeah, yeah, yeah. Yeah.' That's what he said when I asked him do[es] he believe in God.

Sergeant Wells recalled praying for Victim while he took his final breath. Green questioned Sergeant Wells on direct examination:

> [Green:] Did he answer the question of who killed him?
>
> [Sergeant Wells:] Well, I do believe he said a name.
>
> [Green:] Do you recall that name?
>
> [Sergeant Wells:] Yes, I do.
>
> [Green:] What was it?
>
> [Sergeant Wells:] The name I heard him say at that time was Douglas.
>
> [Green:] And you were sure enough to write that time in an incident report?
>
> [Sergeant Wells:] Yes, sir, I did.

On cross-examination, Sergeant Wells testified Victim told him and another officer multiple times that Douglas was the person who shot him. Sergeant Wells clarified Victim was not mumbling, answered the question, and repeated "my mouth."

Moreover, Sergeant Wells asserted he knew Victim said "Douglas" and Victim also said he did not want to die.

The State argued against the admission of Sergeant Wells's testimony because the rule regarding evidence of third-party guilt required Green to provide more testimony regarding the person, time, or place detailing who did the killing. In response, Green asserted he did not solicit the testimony to assign guilt to a third party; rather, he only wished to introduce the statement as a dying declaration. The circuit court stated that while the statement could be admissible as a dying declaration, it needed to examine the evidence under the third-party guilt rule. The court determined Green's evidence "must be limited to such facts as are inconsistent with [his] own guilt, and to such facts as raise a reasonable inference or presumption as to his own innocence." Accordingly, the court sustained the State's objection, finding Sergeant Wells's testimony merely "raise[d] the bare suspicion of third[-]party guilt without any other evidence to support that conclusion," and ruled Sergeant Wells could not testify to hearing the name Douglas.[2] Subsequently, the circuit court declined to hear any more arguments on the matter.

The jury convicted Green of murder, and the circuit court sentenced him to thirty years' imprisonment. This appeal followed.

**STANDARD OF REVIEW**

"In criminal cases, the appellate court sits to review errors of law only." *State v. Wilson*, 345 S.C. 1, 5, 545 S.E.2d 827, 829 (2001). "The admission or exclusion of evidence is left to the sound discretion of the [circuit court], whose decision will not be reversed on appeal absent an abuse of discretion." *State v. Saltz*, 346 S.C. 114, 121, 551 S.E.2d 240, 244 (2001). "An abuse of discretion occurs when the [circuit] court's ruling is based on an error of law . . . ." *State v. McDonald*, 343 S.C. 319, 325, 540 S.E.2d 464, 467 (2000) (quoting *Clark v. Cantrell*, 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000)). "The [circuit] court's discretion will not be overturned absent a showing of an abuse of discretion amounting to an error of law that prejudices the defendant." *State v. Copeland*, 321 S.C. 318, 324, 468 S.E.2d 620, 624 (1996).

**LAW/ANALYSIS**

---

[2] Green declined to call Sergeant Wells as a witness and also elected not to testify.

Green argues the circuit court erred in excluding the testimony of Sergeant Wells under the third-party guilt rule because it was within the exclusive province of the jury to determine whether Sergeant Wells's testimony was credible. We agree.

"All relevant evidence is admissible." *State v. Pagan*, 357 S.C. 132, 142, 591 S.E.2d 646, 651 (Ct. App. 2004), *aff'd as modified*, 369 S.C. 201, 631 S.E.2d 262 (2006). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE. "Evidence which assists a jury at arriving at the truth of an issue is relevant and admissible unless otherwise incompetent." *State v. Schmidt*, 288 S.C. 301, 303, 342 S.E.2d 401, 403 (1986). However, hearsay is not admissible unless it fits within an exception or exclusion to the hearsay rule. Rules 801 and 802, SCRE. A statement made under the belief of impending death is not excluded by the hearsay rule if the declarant is unavailable as a witness in a prosecution for homicide, the statement is made by a declarant while believing the declarant's death is imminent, and the statement concerned the causes or circumstances of what the declarant believed to be impending death. Rule 804(b)(2), SCRE.

In the instant case, Green proffered Sergeant Wells's testimony as a dying declaration by Victim. We find the testimony qualified as a dying declaration because Victim was unavailable as a witness, Green was on trial for murder, the circumstances showed Victim believed his death was imminent, and Victim's statement concerned the cause of what he believed to be his impending death—the name of the person who shot him. *See State v. McHoney*, 344 S.C. 85, 93, 544 S.E.2d 30, 33 (2001) ("A declarant does not have to express, in direct terms, his awareness of his condition for his statement to be admissible as a dying declaration. The necessary state of mind can be inferred from the facts and circumstances surrounding the declaration.").

The United States Supreme Court clarified the third-party guilt rule in *Holmes v. South Carolina*, 547 U.S. 319 (2006), which vacated our supreme court's decision in *State v. Holmes*, 361 S.C. 333, 605 S.E.2d 19 (2004). The Supreme Court held the exclusion of defense evidence of third-party guilt—on the ground that the proffered evidence did not raise a reasonable inference as to the defendant's own innocence—denied the defendant a fair trial. *Holmes*, 547 U.S. at 331. The Court emphasized "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Id.* at 324 (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). The Court explained,

> Just because the [State]'s evidence, *if credited*, would provide strong support for a guilty verdict, it does not follow that evidence of third-party guilt has only a weak logical connection to the central issues in the case. And whe[n] the credibility of the [State]'s witnesses or the reliability of its evidence is not conceded, the strength of the [State]'s case cannot be assessed without making the sort of factual findings that have traditionally been reserved for the trier of fact . . . .

*Id.* at 330. The Court affirmed the third-party guilt rule but cautioned that "by evaluating the strength of only one party's evidence, no logical conclusion can be reached regarding the strength of contrary evidence offered by the other side to rebut or cast doubt." *Id.* at 331.

The circuit court found Sergeant Wells's testimony as to Victim's dying declaration was inadmissible because it raised the bare suspicion of third-party guilt without any other evidence to support that conclusion. We find reversible error in the circuit court's exclusion of the testimony on the basis of third-party guilt. After the circuit court determined Sergeant Wells's testimony qualified as a dying declaration, it became a jury question whether Victim actually told Sergeant Wells that Douglas was the shooter. The determination of the weight to give Sergeant Wells's testimony was within the exclusive province of the jury. *See State v. McKerley*, 397 S.C. 461, 464, 725 S.E.2d 139, 141 (Ct. App. 2012) ("The assessment of witness credibility is within the exclusive province of the jury."); *Soulios v. Mills Novelty Co.*, 198 S.C. 355, 364, 17 S.E.2d 869, 874 (1941) ("[T]his [c]ourt has more than once held that the jury is the judge of which contradictory statement of the witness is the truth."). Green did not have a burden to establish Douglas's identity or the likelihood that Douglas, and not Green, was the actual shooter. Green's right to present witnesses in his own defense was fundamental, and the jury had a right to evaluate the strength of both parties' evidence. *See Holmes*, 547 U.S. at 331 ("[B]y evaluating the strength of only one party's evidence, no logical conclusion can be reached regarding the strength of contrary evidence offered by the other side to rebut or cast doubt."). Therefore, we reverse the order of the circuit court and remand the case for a new trial.[3] *See State v.*

---

[3] Because we reverse and remand the case for a new trial based on this issue, we need not address the remaining issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an

*Hester*, 137 S.C. 145, 161, 134 S.E. 885, 890 (1926) (providing the jury is entitled to hear all competent testimony presented, and the failure to give it such opportunity is generally prejudicial error).

**REVERSED.**

**WILLIAMS, THOMAS, and MCDONALD, JJ., concur.**

---

appellate court need not address remaining issues when its determination of another issue is dispositive of the appeal).