# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Ontario Stefon Patrick Makins, Appellant.

Appellate Case No. 2016-002495

———————

Appeal From Greenville County
Robin B. Stilwell, Circuit Court Judge

———————

Opinion No. 5683
Heard November 7, 2018 – Filed September 4, 2019

———————

## REVERSED AND REMANDED

———————

Appellate Defender Taylor Davis Gilliam, of Columbia,
for Appellant.

Attorney General Alan McCrory Wilson and Assistant
Deputy Attorney General David A. Spencer, both of
Columbia; and Solicitor William Walter Wilkins, III, of
Greenville; for Respondent.

———————

**MCDONALD, J.:** Ontario Stefon Patrick Makins appeals his conviction for third
degree criminal sexual conduct (CSC) with a minor, arguing the circuit court erred
in (1) refusing to allow Makins to cross-examine the victim (Victim) about her
prior allegations of sexual abuse and (2) allowing a therapist to essentially vouch
for Victim's credibility by testifying both as a fact witness regarding Victim's
allegations of abuse and an expert witness on child sexual abuse trauma. We
reverse and remand for a new trial.

**Facts and Procedural History**

In March 2015, training specialists from the Julie Valentine Center[1] visited Mitchell Road Elementary School in Greenville to discuss safety and "inappropriate touching" with students. Approximately two weeks later, on March 20, 2015, Victim reported to her teacher, Mary Kroske (Teacher), that she had been sexually abused. Teacher reported Victim's disclosure to the school's guidance counselor.

Investigator David Picone of the Greenville County Sheriff's Department (GCSD), responded to the school to investigate Victim's report. Picone spoke with Victim's mother, Teacher, and Victim about Victim's disclosure. Victim reported to Investigator Picone that she was abused by her sister's boyfriend, Makins, at the home where the couple lived with their children; Victim stated the abuse began when she was five years old. Investigator Picone testified he did not question Victim, who was eight at the time, about the details of the alleged abuse. Instead, he followed GCSD's procedure for referring children under the age of twelve to the Julie Valentine Center for a forensic interview.

On March 23, 2015, Investigator Picone interviewed Makins and informed him of Victim's allegations of sexual abuse, which Makins denied. While at the GCSD, Makins also met with the South Carolina Department of Social Services (DSS) to discuss DSS's safety plan.

On April 21, 2015, Christine Carlberg of the Julie Valentine Center conducted a forensic interview with Victim.[2] After viewing the forensic interview, Investigator Picone determined probable cause existed to arrest Makins. On August 23, 2016, the grand jury indicted Makins for CSC with a minor, first degree; lewd act upon a minor; and CSC with a minor, third degree.

At Makins's trial, Victim testified that on more than one occasion, Makins asked her to perform oral sex, touched her inappropriately, and showed her a sexually-oriented website on his cell phone.[3] Victim admitted she lied to the police when

---

[1] The Julie Valentine Center is a sexual assault and child abuse recovery center in Greenville County.

[2] The circuit court admitted the tape of the forensic interview into evidence.

[3] Victim was ten years old at the time of trial.

she reported Makins threatened to kill her if she disclosed the abuse. Although the jury found Makins "not guilty" on the CSC (first) and lewd act indictments, it found him guilty of CSC (third) with a minor. The circuit court sentenced Makins to ten years' imprisonment.

**Standard of Review**

"A trial court's decision to admit or exclude expert testimony will not be reversed absent a prejudicial abuse of discretion. An abuse of discretion occurs when the conclusions of the circuit court are either controlled by an error of law or are based on unsupported factual conclusions." *State v. Chavis*, 412 S.C. 101, 106, 771 S.E.2d 336, 338 (2015) (citation omitted).

**Law and Analysis**

**Kristin Rich's Testimony**

Makins argues the circuit court erred in allowing therapist Kristin Rich to indirectly bolster Victim's testimony by permitting Rich to testify as both an expert in child sexual abuse trauma and as a fact witness regarding Victim's allegations of sexual abuse. We agree.

"Expert testimony on rape trauma may be more crucial in situations where children are victims. The inexperience and impressionability of children often render them unable to effectively articulate the events giving rise to criminal sexual behavior." *State v. White*, 361 S.C. 407, 414-15, 605 S.E.2d 540, 544 (2004). While our supreme court has recognized an expertise in child abuse assessment, it has cautioned that "allow[ing] the person who examined the child to testify to the characteristics of victims runs the risk that the expert will vouch for the alleged victim's credibility." *State v. Anderson*, 413 S.C. 212, 218-19, 776 S.E.2d 76, 79 (2015). The better practice "is not to have the individual who examined the alleged victim testify, but rather to call an independent expert." *Id.* at 218, 776 S.E.2d at 79.

"The assessment of witness credibility is within the exclusive province of the jury." *State v. McKerley*, 397 S.C. 461, 464, 725 S.E.2d 139, 141 (Ct. App. 2012). "[A] witness may not give an opinion for the purpose of conveying to the jury—directly or indirectly—that she believes the victim." *Briggs v. State*, 421 S.C. 316, 324, 806 S.E.2d 713, 717 (2017). "Specifically, it is improper for a witness to testify as to his or her opinion about the credibility of a child victim in a sexual abuse

matter." *State v. Kromah*, 401 S.C. 340, 358-59, 737 S.E.2d 490, 500 (2013). A witness should avoid statements:

- explaining that the child was told to be truthful;

- expressing a direct opinion as to a child's veracity or tendency to tell the truth;

- indirectly vouching for the child's believability, such as a statement that the interviewer has made a "compelling finding" of abuse;

- indicating to a jury that the interviewer believes the child's allegations in the current matter; or

- providing an opinion that the child's behavior indicated the child was telling the truth.

*Id.* at 360, 737 S.E.2d at 500.

During the pretrial discussion of Rich's proposed testimony, the circuit court stated it was not necessarily concerned with her qualifications as an expert witness, but with the substance of the opinion she would offer. The State explained, "We'll certainly stay far, far away from [*Kromah*]," and Rich would not be testifying as to the Victim's credibility. The State's plan was for Rich to testify about the symptoms a child sexual abuse victim might display, as well as certain treatment techniques, and discuss the concepts of delayed disclosure and piecemeal disclosure.

> And then we will move into some details of her treatment of this victim. You know, was she diagnosed with anything? What was that diagnosis? What symptoms did Minor exhibit? What therapy model she exhibited? And then, whether or not there was, in fact, a disclosure and time and place of that disclosure.

Makins's counsel responded that he was "very likely to object to most all of that" because while the questions themselves might be appropriate as outlined by the solicitor, he had no idea what Rich's answers would be. The circuit court replied:

This is my concern about this witness and why I'm somewhat circumspect.  We have a long line of cases which discuss expert witness buttressing and credibility of minor witnesses.  And although I think that most of what she talked about in a vacuum is okay, my concern is that she begins to talk about the specific treatment and discussions with this child and without saying "that makes her believeable" she is suggesting that that makes her believeable.

And I want to make sure that what we're not doing is an end run around forensic interviewers being qualified as expert witnesses and thereby buttressing the credibility of witnesses.

The court further explained that while it had not seen a case specifically disallowing the testimony the solicitor sought to offer, "on the other hand, I haven't seen one where the court has accepted anything, other than the blind testimony." The State responded that Rich would not testify "about a diagnosis of child sexual abuse.  She will discuss a diagnosis of post-traumatic stress disorder. But we will not get into the diagnosis of child sexual abuse."  Makins again objected, noting:

'My one concern then is why is she being offered as an expert on child sexual abuse dynamics?

As soon as she gets into saying anything about this is what we see for child sexual abuse, 'these are the symptoms, I found them, they exist in this case', we're going to have trouble.

The circuit court took the matter under advisement, noting the defense would be ready to make the necessary contemporaneous objections.  Still, the court expressed its preference for a blind expert, reiterating the State would have to walk a tight line in offering the testimony.  The circuit court again expressed its concern about Rich's proposed testimony prior to opening statements, explaining, "I'm concerned that if she starts matching up her testimony with [Victim's] symptoms, we are essentially establishing a circumstance where she is vouching for the credibility of [Victim].  If that happens, I don't think that I have any choice but to declare a mistrial and I don't want to get there."

The circuit court qualified Rich as an expert "in the treatment of child trauma and child sexual abuse dynamics," and Rich testified about the symptoms child victims of sexual abuse may exhibit, the concepts of delayed disclosure and piecemeal disclosure, and therapy methods for treating child victims of sexual abuse. In describing the use of therapy to help child victims express themselves, Rich explained, "Oftentimes, with younger children what we do, they have a hard time talking about things so we allow them to draw or just introduce that to a way—can you draw what happened. And they're much more likely to draw rather than just to talk." The solicitor then asked:

> Q. I want to move a little more specifically. Have you provided therapy to the victim in this case, Minor?
>
> A. Yes.

Makins advised the circuit court he had a motion to discuss outside the presence of the jury. Makins moved for a mistrial because Rich had just testified that she treated people diagnosed with trauma due to several causes, including sexual abuse; she had described the symptoms of sexual abuse, including the phenomena of delayed and piecemeal disclosure; and she then answered, more specifically, that she had treated Victim. Makins asserted this testimony essentially implied Victim suffered trauma from sexual abuse, "[s]o she is vouching for the credibility of the witness by saying in essence, 'if she didn't suffer trauma, I wouldn't be working with her. I only work with people who have suffered a trauma.'"

The circuit court found Rich had not "gotten to the point of vouching yet," but she could testify only that she treated Victim for the purpose of reporting that Victim disclosed the sexual abuse to her.[4] Although the circuit court had previously ruled Rich could testify that she treated Victim and Victim was diagnosed with post-traumatic stress disorder (PTSD)—with no discussion of Victim's symptoms—the court modified this ruling, determining Rich would not be permitted to testify about her specific treatment and diagnosis of Victim because such testimony would be the equivalent of vouching. Back in the presence of the jury, Rich's direct examination continued:

---

[4] Section 17-23-175 of the S.C. Code permits the admission of some "out-of-court statements by child sexual abuse victims under the age of twelve when certain conditions are met." *Kromah*, 401 S.C. at 360 n.7, 737 S.E.2d at 500 n7.

Q.     Ms. Rich, did you provide treatment to the victim in this case, Minor?

A.     Yes.

Q.     And did Minor disclose sexual abuse to you?

A.     Yes.

Q.     And how did she tell you about this?

A.     She told me in the context of a therapy session.

Q.     And did she talk about it?  Did she do anything else?

A.     She drew a picture.

The State then produced State's Exhibit 4, which Rich identified as the picture Victim drew when Rich asked her "to talk about or to share, draw a picture about the worst time of the sexual abuse that she reports that happened."  Rich further testified this was Victim's original drawing, bearing some of Rich's notes, and she had Victim draw it as part of Victim's therapy.  Rich then discussed the drawing and the open-ended questions she asked Victim pursuant to the therapy model.  The drawing contains graphic descriptive language, and it is compelling evidence.

At the close of the case, Makins renewed his motion for a mistrial, arguing again that Rich indirectly vouched for Victim's credibility.  The circuit court denied the mistrial motion but stated Makins could ask for a curative instruction to state an expert witness cannot vouch for the veracity of a witness.  Later, within the jury charge, the circuit court instructed, "Also understand that no witness, even an expert witness can vouch for the credibility of another witness'[s] testimony."

Initially, we note that even though Rich was not the designated forensic interviewer, her testimony was akin to that of a forensic interviewer, rather than a blind expert.  Rich testified she treated Victim, and the content of much of her lay testimony was similar to that of a forensic interviewer—i.e. Victim's disclosure of the details of the alleged abuse.  *See, e.g.*, *State v. Brown*, 411 S.C. 332, 345, 768 S.E.2d 249, 253 (Ct. App. 2015) (distinguishing improper bolstering in cases involving witnesses who performed the forensic interview, interviewed minor victims, or commented on the credibility of minor victims from those involving independent mental health experts who "offered admissible expert testimony

regarding the general behavioral characteristics of child sex abuse victims" and did not testify about the applicability of such testimony to the victim), *abrogated on other grounds by State v. Jones*, 423 S.C. 631, 817 S.E.2d 268 (2018).

We find Rich's opinion testimony addressing the various manifestations of child sexual abuse, followed immediately by her affirmative response that she treated Victim, implied she believed Victim was telling the truth with respect to her allegations of sexual abuse. If Rich believed Victim had not been telling the truth, Rich would not have needed to treat her. As the circuit court warned, Rich's testimony implied she was treating Victim for sexual trauma because Victim had suffered such trauma. *See Briggs*, 421 S.C. at 324, 806 S.E.2d at 717 ("[A] witness may not give an opinion for the purpose of conveying to the jury—directly *or indirectly*—that she believes the victim." (emphasis added)); *State v. Dawkins*, 297 S.C. 386, 393, 377 S.E.2d 298, 302 (1989) (holding treating psychiatrist improperly bolstered the credibility of the victim when "the solicitor posed the following question-'Based on your examination and your observations of Pamela, are you of the impression that her symptoms are genuine?', to which the doctor answered, 'yes'"); *McKerley*, 397 S.C. at 465, 725 S.E.2d at 142 (holding that although the forensic interviewer "never testified directly that she believed what the victim stated in her interviews or in her testimony . . . [her] testimony in this case describing what forensic interviewers do demonstrates that virtually all of her testimony indicates she believed victim was truthful").

Allowing this improper testimony was not harmless because the State's case hinged on Victim's credibility. *See State v. Jennings*, 394 S.C. 473, 480, 716 S.E.2d 91, 94-95 (2011) ("The only evidence presented by the State was the children's accounts of what occurred and other hearsay evidence of the children's accounts. Because the children's credibility was the most critical determination of this case, we find the admission of the [forensic interviewer's] written reports was not harmless."). Moreover, "although an expert's testimony theoretically is to be given no more weight by a jury than any other witness, it is an inescapable fact that jurors can have a tendency to attach more significance to the testimony of experts." *Kromah*, 401 S.C. at 357, 737 S.E.2d at 499; *see also Briggs*, 421 S.C. at 334, 806 S.E.2d at 722 ("In addition, as we explained in *Kromah*, the 'impermissible harm' from improper bolstering 'is compounded' when the witness is 'qualified as an expert.'").

"To deem an error harmless, this court must determine 'beyond a reasonable doubt the error complained of did not contribute to the verdict obtained.'" *McKerley*, 397 S.C. at 467, 795 S.E.2d at 143. In light of Rich's testimony discussing the therapy

needed by child sexual abuse victims, the drawing method therapists use to obtain disclosures from young victims, Rich's treatment of the child Victim here, and the way Rich obtained Victim's most detailed disclosure—the drawing—we cannot say "beyond a reasonable doubt" that Rich's indirect bolstering did not contribute to the verdict obtained when considered in the context of the other evidence in this case.

Finally, we find the circuit court's jury instruction was insufficient to cure this error, in part because the court did not immediately instruct the jury when the error occurred. *See State v. Sweet*, 342 S.C. 342, 349-50, 536 S.E.2d 91, 95 (Ct. App. 2000) (noting that "because the trial judge did not give an immediate curative instruction, this case is distinguishable from those cases where a curative instruction given in conjunction with a general jury instruction was sufficient to cure the improper comment on a defendant's failure to testify"). An isolated statement, buried in the midst of the circuit court's jury instructions and unconnected to any specific witness or statement, could not cure the prejudice here. *Cf. State v. Dempsey*, 340 S.C. 565, 571, 532 S.E.2d 306, 310 (noting trial court's curative instructions *during and immediately following* child sexual abuse counselor's bolstering testimony cured any prejudice flowing from the improper vouching).

For these reasons, we reverse Makins's conviction and remand for a new trial.[5]

**REVERSED AND REMANDED.**

**KONDUROS and HILL, JJ., concur.**

---

[5] Because we find the admission of Rich's testimony requires reversal, we decline to address Makins's additional assignments of error. *See Futch v. McAllister Towing of Gerorgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (declining to address remaining issues when determination of a prior issue is dispositive).