741 S.E.2d 27

**In the Matter of the Care and Treatment of THOMAS S., Petitioner.**

Appellate Case No. 2011–194610.

No. 27241.

Supreme Court of South Carolina.

Heard March 5, 2013.

Decided April 10, 2013.

Appellate Defender LaNelle Cantey DuRant, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson and Assistant Attorney General William M. Blitch, Jr., both of Columbia, for Respondent.

Justice PLEICONES.

We granted certiorari to review an unpublished decision by the Court of Appeals which held that trial court did not err in permitting witness Shellenberg to give an opinion. *In re S.*, Op. No. 2011–UP–121 (S.C.Ct.App. filed March 24, 2011). We agree with petitioner and find that Shellenberg, a lay witness, was improperly allowed to offer expert opinion testimony and that this error was not harmless. We therefore reverse and remand for further proceedings.

## FACTS

In 2004, petitioner was adjudicated delinquent on charges of first degree criminal sexual conduct with a minor and disturbing the schools,[1] and committed to the Department of Juvenile Justice (DJJ) for an indeterminate period not to exceed his twenty-first birthday. It appears from the record that petitioner engaged in oral and anal sex, and some fondling, approximately five times over the course of three years, with his step-nephew. Petitioner was aged ten when the first act occurred, and the victim six.

In February 2008, the South Carolina Juvenile Parole Board determined that petitioner was eligible for release. This decision triggered review pursuant to the Sexually Violent Predator Act (SVP Act).[2] S.C.Code Ann. § 44–48–30(5) and § 44–48–40(B) (Supp.2012). Both the multidisciplinary team and the prosecutor's review committee found reason to believe petitioner met the definition of a sexually violent predator (SVP),[3] and a court determined that probable cause existed to believe he was an SVP. §§ 44–48–50 to –80. Dr. Neller was appointed by the court as the qualified expert following the court's probable cause determination. § 44–48–80(D).

Following a trial, a jury determined, beyond a reasonable doubt, that petitioner was an SVP. He appealed, the Court of Appeals affirmed, and this certiorari follows.

## ISSUE

Did the Court of Appeals err in affirming the trial court's decision to allow witness Shellenberg to express an expert opinion?

## ANALYSIS

 The State called three witnesses to testify that petitioner was an SVP, that is, that he (1) had been convicted of or

---

1. Although the dispositional order states the disturbing the schools charge was a probation violation, the charging petition itself does not allege probation was at issue. Compare ROA p. 124 with p. 125.

2. South Carolina Code Ann. § 44–48–10 et seq. (Supp. 2012).

3. See § 44–48–30(1) discussed infra.

adjudicated delinquent for a sexually violent offense and (2) suffers from a mental abnormality or personality disorder that (3) makes him likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment. §§ 44–48–30(1); 6(b). A person is "likely to engage in acts of sexual violence" within the definition of an SVP if his "propensity to commit acts of sexual violence is of such a degree as to pose a menace to the health and safety of others." § 44–48–30(9). The purpose of the SVPA is to involuntarily commit only a "limited subclass of dangerous persons" and not to broadly subject any dangerous person to what may be an indefinite term of confinement. *In re Luckabaugh*, 351 S.C. 122, 568 S.E.2d 338 (2002) citing *Kansas v. Crane*, 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002); *In re Harvey*, 355 S.C. 53, 584 S.E.2d 893 (2003).

Here, there is no question that petitioner satisfied two of the three requirements for being deemed an SVP: he has been adjudicated delinquent for a sexually violent offense and he has been diagnosed as suffering from a mental abnormality.[4] Therefore, the only contested issue at trial was whether that mental abnormality means his "propensity to commit acts of sexual violence is of such a degree" as to place him in the "limited subclass of dangerous persons" who should be "confined in a secure facility for long-term control, care, and treatment."

The State's first witness was Dr. Neller, a board certified clinical psychologist with an emphasis in forensic psychology. Dr. Neller is the Chief Psychologist with the South Carolina Sexually Violent Predator Program, and was the court-appointed expert in this case. Although Dr. Neller diagnosed petitioner as suffering from a mental abnormality, his professional opinion was that petitioner did not meet the SVP criteria. Dr. Neller testified that the purpose of the SVPA was "to identify, essentially, an extremely dangerous group of sexual offenders" and that he did not see how "most any expert" would place petitioner in that group. When questioned about petitioner's conduct that would appear to demon-

---

4. Dr. Neller testified that petitioner was a sexual sadist, that is, "a person who .... enjoys humiliating, a person who enjoys harming, a person who becomes sexually aroused by the harm he's inflicting on a person."

strate to a layperson that he was a danger, e.g., deviant fantasies, downloading a pornographic cartoon depicting violent rape, and repeated disciplinary violations, Dr. Neller testified that none were probative of a likelihood that petitioner would reoffend.

Following Dr. Neller's testimony, the State called Linda Price, an employee of the South Carolina Board of Juvenile Parole. Price's testimony concerned petitioner "acting out" when she went to inform him that the Board had approved his release. He was calm until she told him that the Board had ordered he pay restitution to the State for expenses it had incurred when it paid for his victim's counseling and medical bills.[5] Price testified that petitioner became loud and red-faced, questioned why he should pay restitution, and blamed the victim for his confinement. Price testified she repeatedly told petitioner to hush and sit down, and that before he sat down he "appeared to make a lunge in my direction with his body" and that after sitting he refused to say anything more. She went on to testify to the difficulties in having petitioner's North Carolina relatives agree to take him, and that if he went to North Carolina he would be supervised while on parole but would not be on a public sex offender registry. While there was no objection to Price's testimony on the ground of relevance, it is difficult to understand how this evidence assisted the jury in determining whether petitioner has the required propensity to reoffend such that he is in the small subclass of dangerous offenders who should be involuntarily committed.

The State's final witness was a licensed social worker (Shellenberg) who had worked with petitioner while he was confined in DJJ. She "impeached" Dr. Neller's written report, which stated that petitioner's biological mother had visited monthly, by testifying she only visited twice, by stating Dr. Neller's report failed to include two school disciplinary reports made after the report was prepared, and by testifying that petitioner's medications had been changed after the report

---

5. We question the Juvenile Parole Board's authority to order restitution as a condition of parole. While S.C.Code Ann. § 16–3–1260(3) (2003) permits this type of restitution as a condition of parole or community supervision for persons convicted in General Sessions court, under subsection (4), in juvenile proceedings only the family court is authorized to order it as a condition of probation in juvenile proceedings.

was prepared. Finally, Shellenberg testified that eleven "level drops" for disciplinary infractions were omitted from Dr. Neller's report. Shellenberg admitted, however, there was no sexual component to any of petitioner's disciplinary infractions other than the downloading of the pornographic cartoon.

Shellenberg testified that while she was a certified sex offender treatment specialist, she was not qualified to diagnose petitioner, but that Dr. Neller was. Shellenberg testified she was familiar with Dr. Neller's report, and was asked about the report's conclusion that petitioner's responses on certain assessments were consistent with anti-social narcissistic and paranoid features. The State questioned Shellenberg whether she was testifying as an expert witness, and she acknowledged that she was not.

Shellenberg was then asked if she was familiar with petitioner and whether he "seems to display...." Petitioner's attorney immediately objected on the ground the witness was "not an expert in this." The judge overruled the objection, stating:

THE COURT: Well, no—in her area of involvement, I'll let her answer. The jury understands she's not an expert but she has certain competence in her field, and she's entitled to give her opinion.

Go ahead.

Shellenberg's direct examination continued:

Q. Have you seen Thomas display those very features you referred to a minute ago in Dr. Neller's report: Anti-social narcissistic and paranoid features?

A. Yes, and his triggers are entitlement and power and control.

Q. What do you mean by triggers?

A. Um, with sexual offenders there is an offense cycle, and triggers are the things that could send them into their offense cycle and cause them to possibly re-offend.

Q. Well, what would Thomas' triggers be?

A. Um, entitlement and power and control.

Q. And by entitlement, what do you mean?

A. The sense of grandiosity and—basically, ah, having more knowledge than, probably, another person, more superior traits.

Q. So, when Dr. Neller refers to Thomas having a grandiose sense of self-importance and expects to be recognized as a superior, is that what you're talking about—

A. Yes, I am.

Q. —by entitlement?

A. Yes.

Q. And what was the second thing?

A. Um, power and control.

Q. Power and control, and how would you describe that?

A. That would be associated with his offense in which the other—the child that he victimized was getting more attention, and Thomas felt powerless, and that is the trigger that caused him to offend.

Q. Would Thomas' reaction to [Price's] discussion with him about planned restitution and the statements he made that [Price] has testified about earlier which you heard?[sic]

A. Yes.

Q. Is that consistent with this control feature that you're describing now?

A. Yes, it is.

Petitioner contends, and we agree, that Shellenberg's testimony crossed the line from lay to expert in several particulars. As this Court recently explained:

> Expert testimony differs from lay testimony in that an expert witness is permitted to state an opinion based on facts not within his firsthand knowledge or may base his opinion on information made available before the hearing so long as it is the type of information that is reasonably relied upon in the field to make opinions. *See* Rule 703, SCRE. On the other hand, a lay witness may only testify as to matters within his personal knowledge and may not offer opinion testimony which requires special knowledge, skill, experience, or training. *See* Rules 602 and 701, SCRE.

*Watson v. Ford Motor Co.,* 389 S.C. 434, 445–46, 699 S.E.2d 169, 175 (2010).

Here, the question whether sex offenders enter an offense cycle and therefore reoffend if exposed to certain triggers is not a matter within the purview of a lay witness. Nor was Shellenberg qualified to identify petitioner's purported triggers or define them. She did not observe petitioner when he abused his victim, and did not have personal knowledge of the reasons he committed that abuse, nor did she personally observe the interaction between petitioner and Price. Shellenberg was both testifying to matters beyond her firsthand knowledge, and offering her opinion that the interaction with Price was the type of event that could trigger his offense cycle, therefore increasing his likelihood to reoffend. Shellenberg was improperly permitted to offer expert opinion testimony after the State explicitly presented her as a lay witness and after petitioner lodged a timely objection. *Watson, supra.*

The sole issue before the jury was whether petitioner was likely to reoffend, and Dr. Neller, the sole expert in the case testified he was not. The only evidence in the record of petitioner's "propensity to commit [future] acts of sexual violence" was that of witness Shellenberg, who was improperly allowed to "give her opinion" despite the fact the State explicitly called her as a non-expert. In fact, Shellenberg herself admitted on cross-examination that she was not qualified to diagnose petitioner as an SVP. The erroneous admission of her extensive opinion testimony mandates reversal here. *Compare e.g. State v. Ellis*, 345 S.C. 175, 547 S.E.2d 490 (2001) (improper non-expert opinion testimony which goes to the heart of the case is not harmless).

## CONCLUSION

The Court of Appeals erred in affirming the jury verdict here. We therefore reverse and remand for further proceedings.

**REVERSED AND REMANDED.**

TOAL, C.J., BEATTY, KITTREDGE and HEARN, JJ., concur.