JUSTICE FEW :
*468 **546 Daryl Snow appeals his commitment as a sexually violent predator under the Sexually Violent Predator Act. He argues his diagnosis of Other Specified Personality Disorder is legally insufficient to meet the constitutional and statutory requirements for commitment under the Act, and thus the trial court erred when it denied his motions for a directed verdict and judgment notwithstanding the verdict (JNOV). The court of appeals affirmed his commitment in an unpublished opinion. In re Snow , Op. No. 2017-UP-009, 2017 WL 164484 (S.C. Ct. App. filed Jan. 11, 2017). We affirm the court of appeals.
I. Facts and Procedural History
In 1996, Snow was convicted of assault with intent to commit criminal sexual conduct.[1] In 2006, Snow was convicted of lewd act upon a child[2] and sentenced to fifteen years in prison. Prior to his release, the State filed a petition for civil commitment pursuant to the Sexually Violent Predator Act. S.C. Code Ann. §§ 44-48-10 to -170 (2018).
The State's expert was Marie Gehle, Psy.D., the chief psychologist at the South Carolina Department of Mental Health. At the time of trial, Dr. Gehle had conducted approximately ninety sexually violent predator commitment evaluations. Dr. Gehle evaluated Snow to determine whether he met the criteria for commitment under the Act. Her evaluation included a thorough review of his background, criminal history, and prison records. Dr. Gehle's specific diagnosis was "Other Specified Personality Disorder, current evidence of conduct disorder is insufficient." At trial, she explained "Other Specified Personality Disorder" (OSPD) is listed as a personality disorder in the Diagnostic and Statistical Manual of Mental Disorders , commonly referred to as the DSM-5. The DSM-5 describes OSPD as follows,
**547 This category applies to presentations in which symptoms characteristic of a personality disorder that cause clinically significant distress or impairment in social, occupational, or other important areas of functioning predominate but do not meet the full criteria for any of the disorders in the personality disorders diagnostic class. The other specified personality disorder category is used in situations in which the clinician chooses to communicate the specific reason that the presentation does not meet the criteria for any specific personality disorder. This is done by recording "other specified personality disorder" followed by the specific reason (e.g., "mixed personality features").
American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 684 (5th ed. 2013).
Snow made a motion for a directed verdict, which he renewed at the conclusion of all evidence. The jury found Snow was a sexually violent predator as defined by the Act. The trial court denied Snow's motion for JNOV. After the court of appeals affirmed, we granted Snow's petition for a writ of certiorari.
II. Issue Preservation
The State contends part of Snow's argument-the OSPD diagnosis is legally insufficient to satisfy the "mental abnormality or personality disorder" element required for civil commitment under the Act-is not preserved for appellate review. The State contends the only issue Snow argued to the trial court is the sufficiency of the State's proof.
We have previously stated the Act "contains a two-pronged test to determine whether a person is a sexually violent predator." In re Chandler , 382 S.C. 250, 256, 676 S.E.2d 676, 679 (2009). The "two-pronged" description comes from the Act, which defines sexually violent predator in two parts,
*469 "Sexually violent predator" means a person who:
(a) has been convicted of a sexually violent offense; and
(b) suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment.
**548 S.C. Code Ann. § 44-48-30(1)(a)-(b) (2018). Although the elements are set forth in two subsections, the Act actually requires proof of three separate but related elements. The State must prove (1) the person has been convicted of a sexually violent offense, (2) the person suffers from a mental abnormality or personality disorder, and (3) the mental abnormality or personality disorder makes the person likely to engage in acts of sexual violence if not confined, such that "the person's propensity to commit acts of sexual violence is of such a degree as to pose a menace to the health and safety of others." Id. ; § 44-48-30(9) ; see In re Thomas S. , 402 S.C. 373, 375-76, 741 S.E.2d 27, 28 (2013) (separating the definition of sexually violent predator under subsection 44-48-30(1) into three separate elements); see also Kansas v. Crane , 534 U.S. 407, 409-10, 122 S.Ct. 867, 869, 151 L.Ed.2d 856, 860 (2002) (requiring "a finding of 'dangerousness ... to others' " that is " 'coupled ... with the proof of some additional factor, such as a "mental illness" or "mental abnormality" ' " (quoting Kansas v. Hendricks , 521 U.S. 346, 357-58, 117 S.Ct. 2072, 2080, 138 L.Ed.2d 501, 512-13 (1997) ) ).
The State concedes Snow preserved his challenge to the sufficiency of the evidence under the third element, but it maintains Snow never challenged the constitutionality or legality of using the OSPD diagnosis to satisfy the second element. We disagree. The second and third elements come from the same subsection of the Act and are closely intertwined. As a practical matter, the diagnosis required to meet the second element is often the primary evidence used by the State to satisfy the third element. At trial, Snow's counsel argued Snow's "catch-all" OSPD diagnosis was insufficient to qualify as a personality disorder, and also argued the State failed to prove a causal connection between the OSPD diagnosis and Snow's likelihood to commit future sexually violent offenses. We find Snow's arguments as to both the second and third elements are preserved for our review.
III. Analysis
We review the denial of a directed verdict or JNOV motion in a sexually violent predator trial under an any evidence standard, and we may reverse "only ... if there is no evidence to support the trial court's ruling." In re Matthews , 345 S.C. 638, 646, 550 S.E.2d 311, 315 (2001).
**549 A. The Second Element
Snow argues the OSPD diagnosis is insufficient as a matter of law to satisfy the second element of the definition of a sexually violent predator under the Act. The second element comes from subsection 44-48-30(1)(b), which requires the State prove the person "suffers from a mental abnormality or personality disorder." The Act does not define personality disorder, nor limit the State by restricting which personality disorders it may use to satisfy the second element.
The obvious intent in not defining the term was to leave to medical professionals the task of determining what is-and what is not-a personality disorder. Dr. Gehle testified OSPD "is a personality disorder." OSPD is a diagnosable personality disorder recognized in the DSM-5. See American Psychiatric Association, supra , at 684. Snow argues "Dr. Gehle ... could not diagnose [Snow] with any paraphilia, such as pedophilia or biastophilia." The Act, however, does not require that; it requires a "personality disorder." See Crane , 534 U.S. at 412, 122 S.Ct. at 870, 151 L.Ed.2d at 862 (finding "[t]he presence of what the 'psychiatric profession itself classifie[d] ... as a serious mental disorder' helped to make [the necessary] distinction [of sexually violent predators from other dangerous people] in Hendricks " (quoting Hendricks , 521 U.S. at 360, 117 S.Ct. at 2081, 138 L.Ed.2d at 514 ) ).
Therefore, we find Dr. Gehle's diagnosis of Snow with OSPD qualifies as a predicate personality disorder under subsection 44-48-30(1)(b) of the Act.
*470 B. The Third Element
Snow challenges the sufficiency of the State's evidence on two separate grounds. First, Snow argues the State's evidence was insufficient to prove the third element of the Act-the requirement that Snow's OSPD diagnosis makes him "likely to engage in acts of sexual violence" unless committed. In essence, Snow maintains the State failed to link Snow's OSPD diagnosis to his risk of reoffending sexually. Second, Snow argues the State's evidence was insufficient to satisfy substantive due process because the State did not establish a causal connection between Snow's OSPD and his inability to control his behavior. See Crane , 534 U.S. at 413, 122 S.Ct. at 870, 151 L.Ed.2d at 862 (finding substantive due process **550 requires "there must be proof of serious difficulty in controlling behavior"); In re Luckabaugh , 351 S.C. 122, 144, 568 S.E.2d 338, 349 (2002) ("Inherent within the mental abnormality prong of the Act is a lack of control determination, i.e. the individual can only be committed if he suffers from a mental illness which he cannot sufficiently control without the structure and care provided by a mental health facility. ...").
We find the evidence was sufficient to satisfy the third element. Dr. Gehle testified she was "certain" Snow's OSPD "makes him likely to commit acts of sexual violence." Dr. Gehle testified she completed a Static-99R risk assessment on Snow, which she described as the most commonly used assessment for estimating sexual recidivism. Dr. Gehle explained Snow's score on the Static-99R assessment placed Snow in the high-risk category for reoffending and was higher than 94.9% of the sex offenders included in the research sample. She concluded Snow's likelihood for reoffending within five years was 30.6%, while his likelihood for reoffending within ten years was 39.7%.
Dr. Gehle testified Snow also has many dynamic risk factors, which were not calculated in the Static-99R assessment and which are strongly associated with sexual reoffending. She testified Snow has an extreme hostility towards women and a long history of sexualized violence.[3] She also testified Snow lacks intimate relationships with adults without hostility or violence, surrounds himself with negative social influences, resorts to violence as a method for solving problems, and demonstrates a strong resistance to rules and supervision.[4]
According to Dr. Gehle, Snow has a "very anti-social personality, and a very anti-social world view ... marked by ... a consistent pervasive history of violating and disregarding the **551 rights of others." She testified her evaluation revealed Snow had the propensity to be dangerous, he had "serious difficulty" controlling his behavior, and his OSPD has manifested itself in sexual violence numerous times. She testified Snow's propensity to be dangerous was of such a degree that it poses a menace to the health and safety of others. She did not believe out-patient treatment for Snow at a mental health facility would be sufficient because she believed Snow presents a risk to "women ... or girls of any age in the community."
We find the totality of the evidence presented at Snow's trial sufficiently demonstrated Snow's OSPD makes him "likely to engage in acts of sexual violence" and Snow has "serious difficulty controlling his behavior."
IV. Conclusion
A diagnosis of OSPD is a legally sufficient personality disorder to satisfy the second element of the Sexually Violent Predator Act definition. The State also presented sufficient evidence demonstrating Snow's OSPD makes *471 him likely to engage in acts of sexual violence and that Snow has serious difficulty controlling his behavior. We AFFIRM Snow's commitment as a sexually violent predator under the Act.
KITTREDGE, Acting Chief Justice, JAMES, J. and Acting Justices Aphrodite K. Konduros and Stephanie P. McDonald, concur.

S.C. Code Ann. § 16-3-656 (2015).

The crime occurred in 2005. At that time, the crime of lewd act upon a child was codified at section 16-15-140 of the South Carolina Code (2003) (repealed 2012). The same conduct is now classified as criminal sexual conduct with a minor in the third degree. S.C. Code Ann. § 16-3-655(C) (2015). Lewd act upon a minor child is a sexually violent offense under subsections 44-48-30(2)(f) and (o) (2018).

Snow has an extensive criminal history, including convictions for disorderly conduct, reckless driving, hindering an officer, simple assault, pointing a firearm, malicious injury to property, burglary, kidnapping, ill treatment of a child, criminal domestic violence, and criminal domestic violence of a high and aggravated nature. Snow's record also includes his qualifying convictions under subsection 44-48-30(1)(a) of the Act, a 1996 conviction for assault with intent to commit criminal sexual conduct and a 2006 conviction for lewd act upon a minor.

Snow had thirteen recorded disciplinary infractions while in prison. He was disciplined twice for sexually related offenses, which included one infraction for masturbating in the recreation yard and another for striking an employee after inappropriately grabbing a female staff member.